**In re Karen P. SNOW, Debtor and Appellant.**

**No. 80 C 5771.**

United States District Court, N.D. Illinois, E.D.

July 18, 1983.

Nicholas G. Dozoryst II and Edita L. Arambulo, Law Offices of Nicholas G. Dozoryst II, Chicago, Ill., for debtor and appellant.

Craig Phelps, Chicago, Ill., for appellees.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This action has just been assigned to this Court from the call of our District Court's late esteemed brother, the Honorable Julius J. Hoffman. It had been pending on his calendar on appeal from Bankruptcy Judge Richard Merrick's order denying confirmation of the Chapter 13 plan proposed by debtor Karen P. Snow ("Snow"). Only an appellant's brief has been filed, though on May 7, 1981 Judge Hoffman had ordered appellees to respond 20 days thereafter.

On July 24, 1980 Snow had filed her Chapter 13 petition, statement and plan (the "Plan"). At that time Snow was employed by the Crusade of Mercy at a low annual income level ($13,500) in relation to her scheduled debts (unsecured claims aggregating $15,459, with no secured claims). All Snow's personal property was claimed as exempt under 11 U.S.C. § 522(d) (all subsequent citations to the Bankruptcy Code will simply take the form "Section —"). Accordingly in a straight bankruptcy the estate would have been a no-asset estate, with no distributions whatever to creditors.

When she presented the Plan Snow anticipated her future earnings would generate "surplus" monthly income (not required for actual necessities) of $81.92, out of which she proposed to deposit $65 each month with the Chapter 13 Trustee for a 21-month period. That amount would have permitted the following distributions:

1. to unsecured creditors, 5% of their allowed claims;

2. to the Chapter 13 Trustee, administrative fees equal to 10% of distributions through the Plan; and

3. to Snow's attorney, $200 in payment of the balance of his fees (payable $25 per month for eight months).

There were no creditor objections at the August 25, 1980 confirmation hearing. Nonetheless Judge Merrick denied confirmation of the Plan because:

1. It was not "proposed in good faith" as mandated by Section 1325(a)(3). In those terms Judge Merrick viewed a 10% distribution to creditors as the minimum needed for a plan to comply with the "good faith" requirement.

2. It failed to cover the projected expenses of administration of the Chapter 13 Trustee. Judge Merrick determined allocable costs of administration would be about $300.

### "Proposed in Good Faith"

While the case was pending on Judge Hoffman's calendar, our Court of Appeals added its views to those of the many courts that had led one author to speak of the "Chapter 13 'Good Faith' Tempest."[1] In re Rimgale, 669 F.2d 426, 431 (7th Cir.1982) teaches the creditors' "best interests" test of Section 1325(a)(4)[2] is not dispositive of the separate "good faith" determination to be made under Section 1325(a)(3). But Rimgale also teaches in the latter respect that:

1. No minimum level of repayment is part of the "good faith" standard, for "Congress eschewed setting any minimum levels of repayment that a debtor must propose to qualify for Chapter 13 relief" (699 F.2d at 431).

2. "Good faith" does add something to the wholly objective test under Section 1325(a)(4)—and that something includes notions of "substantiality and best effort" (id. at 432).

■ Obviously the first of those two principles would call for rejection of Judge Merrick's Procrustean 10% test. At the same time, in terms of the second principle it would admittedly stretch normal usage to speak of a 5% distribution to general creditors as "substantial" in the usual case. Nonetheless a number of factors militate in favor of the latter conclusion under the special circumstances here:[3]

1. Snow made a very modest income, and the budget was equally modest, pro-

---

**1.** Cyr, *The Chapter 13 "Good Faith" Tempest: Analysis and Proposal for Change*, 55 Am. Bankr.L.J. 271 (1981).

**2.** This being a no-asset case, the standard of Section 1325(a)(4) is satisfied by definition:

[T]he value, as of the effective date of the plan, of property to be distributed under the plan on account of each unsecured claim [must] not [be] less than the amount that

would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

**3.** This entire analysis speaks as of the date of the Plan. Whatever has happened to Snow since then (and this Court has of course made no such inquiry), "good faith" must be tested as of the time the Plan was presented, not with hindsight.

viding only for necessary expenses of rent, food, transportation and medical expenses.

2. Four-fifths of the "surplus" monthly income over the budget is committed to the Plan payments for 21 months. That means nearly two years of a Spartan existence (leaving just $17 per month over the minimum budget for Snow's own use).

3. Judge Merrick's 10% requirement would stretch the same bleak outlook another year. It is difficult for this Court to see how a debtor's two-year commitment to minimal subsistence is not "good faith," while three years would be.

4. Not one of Snow's creditors objected to the Plan. That does not lessen the Court's responsibility, but surely it bears on an objective determination of Snow's "good faith": None of the persons with a financial stake in the outcome questioned that she had made a meaningful and good faith commitment.

Accordingly this Court determines Judge Merrick's rejection of the 5% "dividend" to unsecured creditors under the Plan was unreasonable. It approves that aspect of the Plan.[4]

*Coverage of Administrative Expenses*

As for Judge Merrick's idea that the Plan should be rejected because it would not "support its own weight" in administrative costs, appellant's brief makes a convincing argument that is not a part of the statutory structure or legislative history. If consistently followed, Judge Merrick's principle would not track the compensation scheme contemplated by Section 1302(e). Because there is no suggestion the self-supporting concept is part of the "good faith" requirement, and because none of the other conditions of Section 1325(a) embraces that

notion, that basis for objection to the Plan is also flawed.

*Conclusion*

Section 1325(a) alone governs plan confirmations. It is the Bankruptcy Court's and this Court's duty to do so ("shall confirm") if the Plan satisfies the six specific conditions of that section. Snow's does. This Court reverses the Bankruptcy Court's August 26, 1980 order denying confirmation of Snow's Plan.

---

4. *Rimgale* would perhaps indicate a remand to the Bankruptcy Court for a redetermination (see 669 F.2d at 432–33). But Judge Merrick has recently decided he has no jurisdiction under the Bankruptcy Code, and his calendar of post-Code cases has been transferred to other judges. Thus it is not possible to have his views as to whether he would reach the same

conclusion in light of *Rimgale.* And this matter has been pending far too long to require a remand and then another appeal to this Court. Because this Court affirmatively finds the "good faith" test satisfied by the 5% provision of the Plan, those added procedural steps would seem pointless.