**In re Gary D. FRANK, Mary F. Frank, Debtors.**

**Bankruptcy No. 86–80095.**

United States Bankruptcy Court, C.D. Illinois.

June 11, 1986.

**130**

James S. Brannon, Peoria, Ill., for debtors.

Bruce R. Becker, Peoria, Ill., for ITT Thorp Corp.

Ray E. Burger, Galesburg, Ill., Trustee.

Richard Bowers, Rock Island, Ill., Trustee.

William D. Clark, Peoria, Ill., Trustee.

## ORDER DENYING CONFIRMATION OF PLAN

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

This matter came on to be heard for confirmation of the debtors' Chapter 13 plan. The debtors' schedules of liabilities list two priority tax claims totaling $8,000.00; four secured creditors with total claims of $8,529.10; and 23 unsecured creditors with total claims of $9,684.21. The debtors' plan proposes to pay priority creditors in full, their attorney $500.00, and the trustee $850.00, for a total payment under the plan of $9,350.00, by paying $165.00 a month over a period of 57 months. The debtors will have no budget excess. The debtors' plan also proposes that collateral for secured loans will be returned to the secured creditors. The Debtors' plan is a zero percentage plan as to unsecured creditors.

One of the debtors' creditors, ITT THORP CORPORATION, holding a secured claim in the amount of $2,304.00, with collateral which the debtors value at $700.00, filed an objection to the confirmation of the plan, and as grounds stated:

1. The plan would extend over 36 months and good cause has not been shown why the plan has been extended over 36 months.

2. The plan has been filed as a sham to pay overdue income taxes and no other creditor will benefit from the plan.

3. The creditor has grounds to object to debtors' discharge on the basis of a false financial statement, which cannot be raised if the Chapter 13 is confirmed, but which could be raised if debtors were in a Chapter 7 proceeding.

The debtors respond to the objection as follows:

1. The debtors are unable to pay any more than the plan proposes without severe stress to their family, which is good cause to extend the plan for longer than 36 months.

2. The United States of America, which is a creditor, and the debtors will both benefit from the plan, and that the purpose of the Chapter 13 is not limited to benefiting only unsecured or other secured creditors.

3. The creditor's charge that the debtors are trying to avoid a dischargeability to claim is inaccurate and irrelevant. It is irrelevant because in enacting the Bankruptcy Code Congress intended that nondischargeable debts could be discharged in a Chapter 13 proceeding and that the debtors filed a Chapter 13 proceeding on advice of their attorney to avoid a tax problem for the debtors should they file a Chapter 7 proceeding.

The issues in this case are (1) whether the zero percent plan for unsecured creditors has been proposed in good faith; and (2) whether cause has been shown for permitting the plan to extend beyond three years.

Section 1325(a) of the Bankruptcy Code sets forth the six conditions for confirmation of the plan, one of which is that the plan must have been proposed in good faith and not by any means forbidden by law. Creditors, in general, are concerned that confirmation of zero percent or minimal payment Chapter 13 plans for unsecured creditors will result in what they perceive to be abusive filings and exploitation of Chapter 13 proceedings; for example, the avoidance of the nondischargeability provisions of § 523. Sharing the creditors' apprehensions and believing the distinctions between Chapter 7 and Chapter 13 proceedings should be maintained, many, but not all, bankruptcy courts refused to confirm zero percent or minimal payment Chapter 13 plans for unsecured creditors for the reason that the failure to provide substantial or meaningful payments to unsecured creditors constituted bad faith.

As these kinds of plans were examined by various courts of appeals, those courts uniformly rejected the idea that Chapter 13 plans in every case require a meaningful and substantial payment to unsecured creditors. *In re Hines,* 723 F.2d 333, 9 C.B. C.2d 1099 (3rd Cir.1983); *Flygare v. Boulden,* 709 F.2d 1344, 8 C.B.C.2d 1027 (10th Cir.1983); *In re Kitchens,* 702 F.2d 885, 8 C.B.C.2d 1022 (11th Cir.1983); *In re Estus,* 695 F.2d 311, 7 C.B.C.2d 948 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968, 7 C.B. C.2d 288 (4th Cir.1982); *Barnes v. Whelan,* 689 F.2d 193, 8 C.B.C.2d 855 (D.C.Cir.1982); *In re Goeb,* 675 F.2d 1386, 6 C.B.C.2d 1208 (9th Cir.1982); *In re Rimgale,* 669 F.2d 426, 5 C.B.C.2d 1281 (7th Cir.1982). These judicial interpretations received congressional approval, when Congress, as part of the 1984 amendments to the Bankruptcy Code, added the disposable income test to § 1325(b). 5 *Collier on Bankruptcy* § 1325.04(2) (15th ed. 1986). There is no need to retrace the history of this litigation and the courts' underlying reasons for such results. The starting point for this court is to apply the guiding factors which the various courts of appeals have developed and

such other relevant factors as may be present in the pending proceeding, and determine whether the good faith requirement necessitates a meaningful and substantial payment to unsecured creditors.

In *In re Rimgale, supra,*[1] the Seventh Circuit Court of Appeals indicated the correct approach was

1. To consider the factors of substantiality and best effort as elements of good faith. Unless the bankruptcy court has the discretion to consider such factors, a danger exists that Chapter 13 plans could become shams that would emasculate the safeguards that Congress included in Chapter 7 to prevent debtor abuse.

2. To consider each case on its own, with the bankruptcy court considering the debtor's entire circumstances in determining whether a plan proposes to make meaningful payments to unsecured creditors and remaining mindful of the fact that unsecured creditors must rely on the bankruptcy court to give meaning to the congressional intent that they receive substantial payments.

3. Provided the following guidelines, not intended to be exhaustive, for the bankruptcy judge's inquiry in that particular matter:

(1) Did the proposed plan state the debtor's secured and unsecured debts accurately?

(2) Did it state the debtor's expenses accurately?

(3) Was the percentage of repayment of unsecured claims correct?

(4) If there were or had been deficiencies in the plan, did the inaccuracies amount to an attempt to mislead the bankruptcy court?

(5) Did the proposed payments indicate "a fundamental fairness in dealing with one's creditors?"

Subsequent to the *Rimgale* decision, other courts have listed the following other factors which bankruptcy courts can consider.

---

1. Subsequently followed in *In re Snow,* 33 B.R.    113 (D.C.N.D.Ill.1983).

1. Did the debtor act equitably?

2. Did the debtor misrepresent his plan?

3. Did the debtor manipulate the bankruptcy code?

4. Was the debtor's plan proposed in an inequitable manner?

5. In light of all the mitigating circumstances, could the debtor's payment be considered to be of a substantial nature? (*In re Goeb, supra*).

6. The percentage to be paid to unsecured creditors.

7. The debtor's financial condition.

8. The period of time of repayment.

9. The debtor's employment history and prospects for future employment.

10. The nature and amount of unsecured claims.

11. The debtor's past history of bankruptcy filing.

12. The debtor's honesty in representing the facts.

13. Any unusual or exceptional problems facing the debtor. (*In re Deans, supra.*)

14. Is there any surplus in the debtor's budget.

15. The debtor's employment history, ability to earn and likelihood of future increases to income.

16. The accuracy of the plan, statement of debts, expenses, percentage of repayments.

17. The extent of preferential treatment between classes of creditors.

18. The extent to which secured claims are modified.

19. Whether any debt is nondischargeable.

20. Special circumstances, such as inordinate medical expenses.

21. Frequency of debtor seeking relief in bankruptcy.

22. Motivation and sincerity of debtor filing Chapter 13.

23. Burden on the trustee in administering the Chapter 13 plan. (*In re Estus, supra.*)

24. The circumstances giving rise to the debt.

25. The debtor's *bona fides* or lack thereof in dealing with creditors.

26. The debtor's motivation in filing Chapter 13.

27. The linkage between the incurring of the debt and the filing of the Chapter 13. (*In re Chase*, 43 B.R. 739, 11 C.B.C.2d 1275 (D.Md.1984).)

In *In re Estus, supra*, the Court of Appeals held there was a lack of good faith, as the proposed plan ran for only 15 months, ignored probable increases to future income, and sought to discharge a student loan.

In *In re Vance*, 49 B.R. 973, 12 C.B.C.2d 1392, (Bkrtcy.Minn.1985), the bankruptcy court refused to confirm a plan of a medical student to repay a student loan by payment of 31%, as the plan lacked good faith in that the debtor's income was expected to go up, and the debtor filed the Chapter 13 proceedings only after a penalty was imposed and the creditor sought to collect it. In *In re Dalby*, 38 B.R. 107, 10 C.B.C.2d 421 (Bkrtcy.Utah 1984), the debtor proposed to pay 40% of surplus income to fund a 30% plan, with the bulk of the unsecured creditors being two student loans. The bankruptcy court refused confirmation on the grounds (1) that not enough surplus income would be used, (2) based upon the debtor's education and lack of disability, the debtor's income might increase, (3) the plan only provided for 36 months of payments, when if it was extended to 5 years, more could be paid to unsecured creditors, and (4) the student loans which were nondischargeable, constituted a high percentage of the total unsecured debt. In *In re Chase, supra*, the debtor proposed a 30% plan over five years to satisfy an award arising out of a child molestation conviction. The District Court held that although there were many factors favorable to the debtor, the nature of the

debt (arising out of child molestation) and the linkage between the incurring of the debt and the filing of the Chapter 13 (the Chapter 13 was filed immediately upon the creditor attempting to enforce the debt) showed a lack of good faith. In *In re Goodavage,* 41 B.R. 742, 11 C.B.C.2d 116 (Bkrtcy.Va.1984), the debtor proposed to pay a single secured creditor 100% over 53½ months and 21 unsecured, 10% over 6½ months. The bankruptcy court first discussed the length of the plan, pointing out that long term plans have marginal feasibility and in many instances failed where there was no room for post petition modification to accommodate changed circumstances. The bankruptcy court went on to deny confirmation, as it considered the plan marginal, the debtor's work seasonal, there was no cushion in the plan, and the debtor's history showed recurring medical expenses. In *In re Landis,* 29 B.R. 235, 8 C.B.C.2d 494 (Bkrtcy.Kan.1983), the bankruptcy court held the debtor showed bad faith by filing three Chapter 13 cases within two years of receiving a discharge in a previous Chapter 7 case. In *In re Eppers,* 38 B.R. 301, 10 C.B.C.2d 812 (Bkrtcy.N.M.1984), where the debtor had borrowed a substantial sum from a bank ostensibly to use for business purposes, but used it for fun and relaxation, and then improperly disposed of the bank's collateral, with the bank holding two-thirds of the total debt, and the debtor, who lived in Texas, was judgment proof, and proposed to pay 16% over five years, the court held that bad faith had not been established.

The proposal of zero percent or minimal payment Chapter 13 plans has not been a common occurrence in this district and this is the first opportunity that this court has had to rule on these types of plans. Were it not for this court's ruling on the second issue raised in this case, the matter would be rescheduled for hearing in order that all parties in interest could present evidence and make argument consistent with this order.

The second issue raised in this proceedings is whether the debtor has shown cause for extending the plan to 57 months. Section 1322(c) of the Bankruptcy Code provides as follows:

"(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years."

Congress clearly intended that plans which went beyond three years would have some special supporting reason, but left the definition of "cause" used in § 1322(c) to judicial discretion to be decided by the facts in each case. *In re Poff,* 7 B.R. 15, 6 B.C.D. 1320 (Bkrtcy.S.D.Ohio 1980). In the *Poff* case the debtor proposed to pay secured creditors 100% and unsecured creditors 50% over a 60 month period, and the bankruptcy court held that in the context of the facts of that case proposing 50% to unsecured creditors was not such a special supporting reason to fall within the cause requirement of § 1322(c) and the plan must either be an extension plan (100%) or a composition plan with at least 70% to the least favored class of unsecured creditors. The result in the *Poff* case was approved in *In re Levine,* 10 B.R. 168, 4 C.B.C.2d 359 (Bkrtcy.Mass. 1981).

The debtors in this case have taken the position they have shown cause because they are unable to pay any more than the plan proposes without severe stress to their family. The debtors' best effort is considered under § 1325. The inability to pay more to unsecured creditors because all the disposable income is going to priority creditors, attorney fees, and costs does not constitute cause for extending the plan beyond three years.

Because the debtors' proposed Chapter 13 plan fails to comply with § 1322(c), confirmation is hereby DENIED.