**In re David L. BAKER, Debtor.**

**Bankruptcy No. 89–30570–C.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

July 3, 1991.

Jerry Tanzy, El Paso, Tex., for debtor.

R. Glen Ayers, Jr., Cox & Smith, Inc., San Antonio, Tex., for trustee, Ms. Phyllis Bracher.

## MEMORANDUM DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for further consideration, upon remand by the district court for further consideration of the good faith issue under Section 1325(a)(3) of the Bankruptcy Code, the objection of Phyllis Bracher, the standing Chapter 13 Trustee for the Western District of Texas, El Paso Division, to confirmation of the Debtor's Chapter 13 plan. Upon consideration of the materials submitted, including an *amicus curiae* brief submitted by Marion A. Olson, the standing Chapter 13 Trustee for the San Antonio Division of this district, the appellate briefs filed by the parties in the district court, the order of remand, and testimony taken and arguments made at the hearing, the court now enters this decision disposing of this matter.

### BACKGROUND FACTS AND POSITIONS OF THE PARTIES

David L. Baker ("Debtor") filed for Chapter 13 relief in July of 1989.[1] The Debtor submitted a Plan which proposed to pay net disposable income over three years, yielding a dividend of approximately ten percent to unsecured creditors.

At the initial hearing on confirmation, the Trustee testified that all of the prerequisites for confirmation were present, including the commitment of all the Debtor's disposable income for thirty-six months. 11 U.S.C. § 1325(b). The Trustee did not recommend confirmation, however, because, in her view, the plan had not been

---

1. There is one companion case to the one at bar, *In re Lloyd L. and Robbin Dale Loen,* Case Number 89–30491. The issues are essentially identical and this ruling is binding on these two cases.

presented in good faith, in turn because the debtor could repay all of his creditors in full, or at least a significantly higher portion thereof, if the plan term was extended beyond thirty six months to sixty months. The Trustee maintained that the Debtor's refusal to amend his plan accordingly demonstrated that the plan was not proposed in good faith. 11 U.S.C. § 1325(a)(3). The court (the Honorable Ronald B. King presiding) agreed, and denied confirmation. The United States District Court reversed and remanded because the record did not provide an adequate analysis of the issue of good faith.

The Trustee has stated in both this hearing and the prior hearing, as well as in her appeal that the Chapter 13 Trustee in El Paso, Texas, for public policy reasons, has strongly encouraged the use of 100% plans for many years. Frequently, to have a plan as close to 100% payout as possible, the Trustee will encourage debtors to make use of the full five year payout period that may be available, upon a proper showing of cause, under Chapter 13. 11 U.S.C. § 1322(c). The Trustee argues that, if the Chapter 13 program is to be successful and is to work any "rehabilitation" of the Debtor (including a restoration of the Debtor's credit rating), plans should provide significant recovery for unsecured creditors. Otherwise, she says, Chapter 13 becomes merely a debt collection procedure for secured creditors, with unsecured creditors realizing little or no benefit, an outcome entirely inconsistent with clearly expressed congressional policy which favors the use of Chapter 13 over Chapter 7, primarily for the benefit of unsecured creditors.[2] The

Trustee concludes that "three year plans which do not pay a significant percentage of the unsecured obligations are not in 'good faith' where the debtor, by paying over five years, could significantly increase the recovery for unsecured creditors."[3]

The Debtor responds that the Trustee's recommendations impose a *sub rosa* rule that all composition (i.e., paying less than 100% to unsecured creditors) cases must extend beyond thirty-six months and, as such, effectively amends the Bankruptcy Code by imposing a requirement not found in the Code. Debtor further asserts that the court may not so legislate under the guise of statutory construction. The Debtor concludes that the court may of course view the issue of "good faith" on a case-by-case basis, but that a blanket rule that all composition plans which stop at thirty-six months are proposed in bad faith amounts to impermissible judicial legislation.

## ANALYSIS

Section 1322 provides, in relevant part, that ".... [t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years." 11 U.S.C. § 1322(c). The Code thus defines the standard term for Chapter 13 plans as three years, and makes five year terms discretionary. The statute, by its terms, thus does not require a person to file a five year plan. To the contrary, the debtor must obtain permission and make a showing of "cause" before the plan term can be extended beyond three years. 11 U.S.C. 1322(c).[4]

**2.** Secured creditors in both Chapter 13 and Chapter 7 retain their liens, with such creditors getting their collateral back in the Chapter 7 case.

**3.** The trustee also criticizes the debtor's plan for its failure to affirmatively pay interest to unsecured creditors. Section 1325(a)(4) provides, in relevant part, that

... [T]he court shall confirm a plan if ... the value, *as of the effective date of the plan,* of property to be distributed under the plan on account of each unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7....

11 U.S.C. § 1325(a)(4) (emphasis added). The section thus requires that the present value of the amount an unsecured creditor is to receive under the proposed plan be greater than or equal to what he would receive were the estate liquidated under Chapter 7 on "the effective date of the plan." *Matter of Smith,* 848 F.2d 813, 820 n. 7 (7th Cir.1988); *see In re Hardy,* 755 F.2d 75 (6th Cir.1985). No proof was put on to demonstrate that unsecured creditors will receive under this plan less than they would in a chapter 7 liquidation. This argument is therefore rejected.

**4.** *See, e.g., In re Frank,* 69 B.R. 129 (Bankr. C.D.Ill.1986); *In re Price,* 20 B.R. 253 (Bankr.

Section 1325 in turn provides, in relevant part, that ".... the court shall confirm a plan if ... the plan has been proposed in *good faith....*" 11 U.S.C. § 1325(a)(3) (emphasis added). "Good faith" is neither defined in the Bankruptcy Code nor discussed in the legislative history. *In re Nittler*, 67 B.R. 217, 221 (D.Kan.1986), (quoting *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431–32 (6th Cir. 1982). The meaning of "good faith" in Section 1325(a)(3) has engendered no small body of case law from the courts. *Flygare v. Boulden*, 709 F.2d 1344, 1346 (10th Cir. 1983); *see* 5 L. King, *Collier on Bankruptcy* ¶ 1325.01[c] at 1325–8.6 (15th ed. 1982) ("With the possible exception of the 'adequate protection test,' the controversy concerning good faith under Chapter 13 has resulted in more litigation than any other issue to have arisen during the year immediately following the effective date of the Bankruptcy Code"). The meaning of "good faith" is critical to the ultimate resolution of this case.

No less than seven circuits have considered what is meant by good faith, but all seven have formulated a "middle road" approach. *Matter of Chaffin*, 836 F.2d 215, 217 (5th Cir.1988); *In re Kitchens*, 702 F.2d 885 (11th Cir.1983); *In re Estus*, 695 F.2d 311 (8th Cir.1982); *In re Deans*, 692 F.2d 968 (4th Cir.1982); *In re Barnes*, 689 F.2d 193 (D.C.Cir.1982); *In re Goeb*, 675 F.2d 1386 (9th Cir.1982); *In re Rimgale*, 669 F.2d 426 (7th Cir.1982). None of these cases find the amount of the payment dispositive of the issue. *Flygare*, 709 F.2d at 1347; *In re Estus*, 695 F.2d at 315–16; *but see In re March*, 83 B.R. 270 (Bankr. E.D.Pa.1988).

The Eighth Circuit set out eleven factors it found relevant to the good faith inquiry in Chapter 13 cases:

1) the amount of the proposed payments and the amount of the debtor's surplus;

2) the debtor's employment history, ability to earn and likelihood of future increases in income;

3) the probable or expected duration of the plan;

4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5) the extent of preferential treatment between classes of creditors;

6) the extent to which secured claims are modified;

7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

8) the existence of special circumstances such as inordinate medical expenses;

9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11) the burden which the plan's administration would place upon the trustee.

*In re Estus*, 695 F.2d 311, 315–16 (8th Cir.1982); *Flygare v. Boulden*, 709 F.2d 1344, 1347 (10th Cir.1983). More recent cases also utilize a multifactor test to evaluate "good faith." *See In re Caldwell*, 895 F.2d 1123 (6th Cir.1990); *In re Lawson*, 93 B.R. 979 (Bankr.N.D.Ill.1988); *In re Rose*, 101 B.R. 934 (Bankr.S.D.Ohio 1989); *In re Jacobs*, 102 B.R. 239 (Bankr.E.D.Okla. 1988). The multifactor approach is consistent with the Fifth Circuit's more general "totality of the circumstances" test, simply giving courts (and practitioners) guideposts about what circumstances in particular are relevant to the issue. Of course, the good faith inquiry is fact-sensitive, and so must be made on a case-by-case basis. *See Matter of Chaffin*, 836 F.2d 215, 217 (5th Cir. 1988); *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983); *In re Smith*, 848 F.2d 813 (7th Cir.1988); *In re Goeb*, 675 F.2d 1386, 1390 (9th Cir.1982); *In re Warner*, 115 B.R. 233, 238 (Bankr. C.D.Cal.1989).

The amount of payment and respective plan term is indeed one relevant factor. *In re Estus, supra.* In the Fifth Circuit, however, it can never by itself be dispositive. *Matter of Chaffin*, 836 F.2d at 217. We are obligated in this circuit to look at the totality of the circumstances, and the plan

W.D.Ky.1981); *Matter of Minor*, 16 B.R. 147 (Bankr.S.D.Ohio 1981); *Matter of Davis*, 68 B.R. 205 (Bankr.S.D.Ohio 1986).

term is but one of those circumstances. A *per se* rule linking the term of the plan to the *bona fides* of the plan is wrong as a matter of law.

The debtor is correct in cautioning this court to avoid a foray into judicial legislation. *See In re Bruce*, 96 B.R. 717, 721 (Bankr.W.D.Tex.1990) ("the scope of a bankruptcy judge's role ... is to interpret and apply the statute, not to rewrite it"). The warning is especially appropriate when the statutory signals run so strongly counter to the direction urged by the trustee here. The language and structure of the statute all point to an assumption on Congress' part that the appropriate term for the average chapter 13 plan would be three years, and that five year plans would be the exception rather than the rule. *See* 11 U.S.C. §§ 1322(c), 1325(b). Observed the House Report:

> ... [I]n certain areas of the country, inadequate supervision of debtors attempting to perform under wage earner plans have (sic) made them a way of life for certain debtors. Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude....

H.R.Rep. No. 595, 95th Cong., 1st Sess. 117 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6078; 5 L. King, *Collier on Bankruptcy* ¶ 1322.15 (15th ed. 1982)[5]; *In re Greer*, 60 B.R. 547, 555 (Bankr. C.D.Cal.1986) (acknowledging Congress' concern over involuntary servitude); *In re Pierce*, 82 B.R. 874 (Bankr.S.D.Ohio 1987) (discussing concern over involuntary servitude); *In re Porter*, 102 B.R. 773 (9th Cir. BAP 1989) (discussing concern over invol-

untary servitude).[6] The Code departed from prior practice under the Act, which placed no hard and fast limit on the term of a plan, by fixing the absolute maximum term of a plan at five years, and permitting extensions beyond three years only upon a showing of cause. 11 U.S.C. § 1322(c). Regardless of the motivation, be it solicitude for debtors' being pressed into involuntary servitude or concern over the prejudice to creditors from extended payouts, there can be little doubt of Congress' intentions that the preferred term for chapter 13 plans would be three years.

Further evidence of Congress' belief that the appropriate term of a chapter 13 plan is three years is demonstrated by its use of the thirty six month term in Section 1325(b). This section, commonly called the "best efforts" test, was enacted in response to case law criticizing the use of zero percent plans in many parts of the country. The statute now requires that, upon objection by an appropriate party (including the trustee), the court may only confirm a plan upon finding that the debtor has devoted all of his or her net disposable income to the plan *over a three year period*. 11 U.S.C. § 1325(b). The requirement is the same, even if the term plan is itself longer than three years. That Congress enacted Section 1325(b) in response to the hundreds of cases which had excoriated low percentage plans under the good faith standard confirms that Congress never intended Section 1325(a)(3) alone to control the amount or length of payment in chapter 13 plans. *See In re Greer*, 60 B.R. at 555.

Of course five year plans generate more income than do three year plans having the same provisions. A ten year plan would pay more than a five year plan, too. That Congress *permits* plans to go five years

---

**5.** Colliers also notes that Chapter XIII was enacted in 1938 principally in response to the appeals of two men, one of whom, Referee Charles True Adams of Chicago, testified in 1937: "I think we have something that was not in the others.... We do not want to make *wage slaves* out of these men [women], we do not want them bound for life when they are under this plan." Hearings on H.R. 8046, Subcomm. on the Judiciary, House of Representatives, 75th Cong., 1st Sess. 53 (1937) (emphasis

added); *see* 5 L. King, *Collier on Bankruptcy* ¶ 1322.15 (15th ed. 1982).

**6.** It also appears that Congress believed that a longer term plan might be more prejudicial to creditors as well by virtue of the delay in receiving payments. *See In re Lindsey*, 122 B.R. 157, 159 (Bankr.M.D.Fla.1991). *See also* 11 U.S.C. § 1307(c)(1).

does not mean that Congress *expects* plans to go that long whenever an extended term will pay more money to creditors. Three years is the term obviously recommended in the statute. Had Congress truly intended to emphasize higher payouts over limited terms, it would have *reversed* the structure of Section 1322(c), permitting the debtor to *shorten* the term to 36 months upon a showing of cause. That was not Congress' choice, nor is that option open to this court. *Reiter v. Sonotone*, 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).[7]

By the same token, the term of the plan is a relevant consideration to the good faith inquiry. *Matter of Chaffin*, 836 F.2d at 217; *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir.1983) ("... the phrase 'proposed in good faith' must be viewed in light of the totality of the circumstances surrounding ... a given Chapter 13 plan."); *Matter of Chaffin*, 836 F.2d 215, 217 (5th Cir.1988); *see also Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1353 (5th Cir.1989). A plan which proposes to discharge a tort claim determined to be nondischargeable in a prior chapter 7 case by means of a three year plan which pays 30% of the claim, when a five year plan would pay the same claim 70%, could easily fail the good faith "totality of the circumstances" test. Whether this plan fails that same test is quite another issue.

Under a totality of the circumstances analysis, the percentage of the payout is certainly significant. The court is reluctant to attempt drawing bright lines in this area left intentionally vague by the "totality of the circumstances" test in *Chaffin*. Certainly, a one percent payout will draw much greater scrutiny than would a 90% payout, however, and the ability to substantially increase the payout via an extended term may be relevant to the good faith analysis in those circumstances. Of-

ten, though, this factor will be diluted in the overall good faith inquiry, and an objection can usually be sustained only if additional factors indicative of bad faith are also present. *See, e.g., In re Estus*, 695 F.2d at 315–16.

Another legitimate circumstance to consider is the extent to which the plan's principle purpose proves to be the payment of secured debt, as opposed to unsecured debt. There can be little doubt of Congress' belief that the primary benefit of chapter 13 relative to chapter 7 is the expected improved return for unsecured creditors. 11 U.S.C. § 707(b); *In re Schaitz*, 913 F.2d 452, 454 (7th Cir.1990) ("The very purpose of Chapter 13 is to allow the bankrupt to pay his debts, in part anyway, out of future income, potentially to the benefit of his creditors."); *In re Krohn*, 886 F.2d 123, 125 (6th Cir.1989) ("[U]nder Chapter 13 a debtor may adjust the amount of his unsecured debts in exchange for dedicating to creditors a portion of his future income."). A brief review of the legislative history also yields some positive insight.

> The purpose of chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. [T]he benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits a debtor to protect his assets. [T]he benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess p. 118 (1977), U.S.Code Cong. & Admin.News 1978, 6079. Secured creditors have multiple protections in chapter 7 cases, while unsecured creditors are limited to the pro-

---

7. [T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it, the sole function of the court is to enforce it according to its terms.

*Central Trust Co. v. Official Creditors' Committee of Geiger Enterprises*, 454 U.S. 354, 359–60, 102 S.Ct. 695, 698, 70 L.Ed.2d 542 (1982) (per curiam).

ceeds of liquidated unencumbered assets.[8] In chapter 13, by contrast, the estate's property extends to post-petition income earned for a period of years. 11 U.S.C. § 1306. If virtually all of that income is being devoted to the payment of secured debt, chapter 13 becomes little more than court-supervised system of reaffirmation of secured debt, with little attendant benefit to the intended beneficiaries of the chapter, unsecured creditors.

The motivations of the debtor seem to be, at first glance, far too nebulous a consideration to be factored into this analysis, yet the cases which have discussed good faith frequently delve into intent. That seems not at all inappropriate, given that we are asked to evaluate the *bona fides* of the debtor in proposing the plan. *See In re Waldron*, 785 F.2d 936, 941 (11th Cir.1986), *cert. dismissed*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986) ("[W]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to *examine* and question the debtor's *motive*.") (emphasis added); *see also In re Whitelock*, 122 B.R. 582, 591 (Bankr.D. Utah 1990) ("[A] court should primarily *investigate* the intent or *motive* of the debtor in proposing the discrimination [in reference to 11 U.S.C. § 1332(b)(1)] in question.") (emphasis added). The mere fact that the debtor elects not to submit itself to a five year drill is not, of itself, sufficient to call the debtor's motives into question, as the Trustee broadly suggests when she points up the breadth of the discharge chapter 13 debtors receive in exchange for their commitment to a payout term. Nonetheless, a court might well conclude that a debtor who could substantially improve the payout to creditors under a longer plan who none-theless insists on a shorter term may not be the sort of debtor whose intentions should enjoy the endorsement of the court. Again, even with this, there must be additional indicia of bad faith. *Matter of Chaffin*, 836 F.2d at 217; *In re Estus*, 695 F.2d at 315–16.

One circumstance the Trustee urges the court to consider is that, if debtors in general are "allowed to use a minimal payback plan to discharge valid debt, they will not in any way rehabilitate themselves or their credit rating." Rehabilitation or improvement of credit rating, however laudable, are personal choices which cannot be imposed by judicial fiat. At best, the court (and the Trustee, for that matter) can *encourage* higher payouts. They cannot impose them in the name of doing what is for the debtors' own good.[9] This factor cannot carry a great deal of weight in the totality of the circumstances analysis.

The Trustee next argues that the outcome of this case has the potential of injuring the entire Chapter 13 program. "If most or even a large number of Chapter 13 debtors are not rehabilitated, and use Chapter 13 as a 'payout' alternative to Chapter 7 liquidation, creditors and others in the community will not accept and support those other Chapter 13 debtors who do use Chapter 13 in good faith." Such public policy considerations as this are more properly the concern of the legislature. *BankAmerica Corp. v. United States*, 462 U.S. 122, 139, 103 S.Ct. 2266, 2276, 76 L.Ed.2d 456 (1983) ("we are bound to respect [the choice of Congress]; we are not to rewrite the statute based upon our notions of appropriate policy").

The court certainly agrees that five year plans are a positive tool in communities

---

**8.** In addition to relief from stay and abandonment, the Code also offers secured creditors repayment via redemption or, if the debtor agrees, reaffirmation of debt. One lawyer who testified at the hearing acknowledged that secured creditors actually prefer chapter 7 to chapter 13, because they can use their leverage to obtain favorable reaffirmation agreements.

**9.** Indeed, if the credit community truly wants debtors to commit themselves to higher payout plans, then the credit community should reward such commitments with positive, tangible benefits, such as credit restoration, higher credit ratings, and deletion of the bankruptcy from the debtor's credit record. Steps are already being taken in this direction in at least two communities, San Antonio, Texas and Columbus, Ohio. Congress would do well to closely study these programs and perhaps to incorporate some of their provisions into the federal laws which govern fair credit reporting nationwide.

such as El Paso, where it is difficult for debtors to repay any significant portion of their unsecured debt within a three year term. As the Trustee notes, many debtors' incomes are simply too low to repay much more than a token portion of unsecured debt unless the plan term is extended. That is a justifiable consideration of which a court should take cognizance when it is evaluating the totality of the circumstances. In view of Congress' concerns about involuntary servitude, however, the court would also be well-advised to keep that consideration in mind as well when evaluating the totality of the circumstances. *See* H.R.Rep. No. 595, *supra* at 117, U.S.Code Cong. & Admin.News 1978, 6077–6078.

Based on these considerations, we now turn our attention to the facts of this case. The only indicia of bad faith raised by the Trustee in this case is that the plan term is for three years rather than five. The Trustee testified that all of the other prerequisites for confirmation were present. Under the totality of the circumstances test, as expanded in this decision, this court does not find that the Debtor's Plan was proposed in bad faith. *Matter of Chaffin,* 836 F.2d at 217. The amount of repayment, as a function of the plan term, is only one indicia of bad faith. *In re Estus,* 695 F.2d at 315–16; *Flygare,* 709 F.2d at 1347; *In re Caldwell,* 895 F.2d at 1126. There are no other indications of bad faith presented by the facts of this case. The objection will accordingly be overruled, and the plan confirmed.