HENLEY, Senior Circuit Judge.
 

 Creditor-appellant United States appeals from the decision of the district court upholding the bankruptcy court’s confirmation of the Chapter 13 plan of the debtors-appel-lees Ronald and Doris Estus. Appellant, holder of an unsecured claim based on a Veterans Administration education loan, argues that the plan does not meet the good faith requirement of 11 U.S.C. § 1325(a)(3). Because we cannot endorse the court’s construction of the statute, we reverse and remand for additional proceedings in the bankruptcy court.
 

 On July 9,1980 debtors filed a Chapter 13 petition in bankruptcy. Debtors listed $10,-994.20 in debts to thirty unsecured credi
 
 *313
 
 tors, including the $2,942.40 student loan from appellant and $2,268.00 in employee credit union loans. The petition and plan also listed two secured debts totaling $896.97 to Haverty’s Furniture and J & J Piano, plus a mortgage secured by income-producing rental property for which debtors were five months in arrears. Debtors listed monthly expenses of $492.00 which, when subtracted from debtors’ total monthly income of $745.00, left a surplus of $253.00. Debtors proposed to pay $250.00 of the surplus to the trustee for fifteen months for a projected pay-out of $3,538.67. The plan provided for payment only to the secured creditors so that after fifteen months the debts to Haverty’s Furniture and J & J Piano would be fully paid and mortgage payments would be current. The plan provided for no payments to unsecured creditors.
 

 Appellant objected to the confirmation of the plan on the ground that it was not proposed in good faith, as required by 11 U.S.C. § 1325(a)(3), because the plan provided no payments to unsecured creditors. On April 20, 1981 the bankruptcy court denied and dismissed appellant’s objection and confirmed the debtors’ plan based on the determination that under a Chapter 7 liquidation the unsecured creditors would have received nothing. The court reasoned that “[t]he Bankruptcy Code requires that the plan provide for distribution of properties at least equal to what the creditor would receive had there been a Chapter 7 liquidation. [11 U.S.C. § 1325(a)(4)] A specific payment to unsecured creditors is not mandatory to meet the good faith requirement.”
 
 In re Estus,
 
 No. LR 80-694, slip op. at 2 (Bankr.E.D.Ark. April 20,1981).
 

 On appeal to the district court, the ruling of the bankruptcy court was affirmed.
 
 [1]
 

 The present provisions of Chapter 13 were enacted by Congress as a part of the Bankruptcy Reform Act of 1978. 11 U.S.C. §§ 1301-1330. Congress perceived that a major problem under the old bankruptcy law was the inadequacy of relief provided for consumer debtors.
 
 [2]
 

 See
 
 H.R. Rep. No. 595, 95th Cong., 2d Sess. 4,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5963, 5966. New Chapter 13 was enacted to provide an effective system for dealing with consumer bankruptcies and also to encourage more debtors to attempt to pay their debts under bankruptcy court supervision.
 
 See id.
 
 at 5,
 
 reprinted in
 
 1978 U.S. Code Cong. & Ad.News at 5966; S.Rep. No. 989, 95th Cong., 2d Sess. 13,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5799. Congress liberalized the provisions of former Chapter 13 by expanding the class of
 
 *314
 
 individuals eligible to use the plan,
 
 [3]
 
 by eliminating the previous requirement of unsecured creditor approval of the debtor’s plan,
 
 [4]
 
 and by expanding the scope of the debtor’s discharge upon successful completion of the plan.
 
 [5]
 
 In addition, Chapter 13, in contrast to Chapter 7, does not require the debtor to surrender all nonexempt assets for distribution to creditors.
 
 [6]
 

 The bankruptcy judge must confirm a plan that meets the six criteria established by Congress in 11 U.S.C. § 1325(a).
 
 [7]
 
 Appellant urges that appellee’s plan which provides nothing to unsecured creditors does not meet the subsection (a)(3) requirement that the plan be proposed in good faith. Congress has not provided the courts with a definition of good faith, and the courts have stated various interpretations of the role of the good faith requirement in determining whether specific plans proposing zero or minimal payments to unsecured creditors deserve confirmation. Several courts have denied confirmation of nominal payment plans, reasoning that good faith requires substantial or meaningful payment to unsecured creditors.
 
 See, e.g., In re Heard,
 
 6 B.R. 876, 881 (Bkrtcy.W.D.Ky.1980);
 
 In re Iacovoni, 2
 
 B.R. 256, 267 (Bkrtcy.D.Utah 1980).
 
 [8]
 
 Other courts, including the bankruptcy and district courts in the present case, have rejected the imposition of a meaningful payment requirement. In main, these courts view 11 U.S.C.
 
 *315
 
 § 1325(a)(4), which requires that creditors under the debtor’s Chapter 13 plan receive “not less than the amount” that they would receive in a Chapter 7 liquidation, as the only confirmation requirement with respect to payments to unsecured creditors.
 
 See, e.g., In re Sadler,
 
 3 B.R. 536, 536-37 (Bkrtcy.E.D.Ark.1980);
 
 In re Harland,
 
 3 B.R. 597, 598-99 (Bkrtcy.D.Neb.1980). Since debtors are allowed generous exemptions in 11 U.S.C. § 522(d), many consumer debtors have no nonexempt assets. Therefore, creditors in a Chapter 7 liquidation would receive nothing and, in many such cases, zero payments to unsecured creditors under a Chapter 13 plan would meet the “best interests” test of subsection (a)(4).
 
 See In re Scher,
 
 4 Collier Bankr.Cas.2d 784, 798 (Bankr.S.D.N.Y.1981);
 
 In re Yee,
 
 3 Collier Bankr.Cas.2d 388, 396 (Bankr.E.D.N.Y.1980).
 

 Still other courts have taken a middle road approach. These courts do not automatically reject a plan which proposes nominal payments to unsecured creditors, but neither do they automatically confirm a plan as meeting the subsection (a)(3) good faith requirement if the subsection (a)(4) “best interests” test is met. Instead, these courts reason that a finding of good faith requires an inquiry, on a case-by-case basis, into whether the plan abuses the provisions, purpose or spirit of Chapter 13.
 
 See, e.g., In re Polak,
 
 9 B.R. 502, 510 (D.C.W.D.Mich.1981);
 
 In re Long,
 
 10 B.R. 880, 881-82 (D.C.D.S.D.1981);
 
 In re Roll,
 
 12 B.R. 654, 658-59 (D.C.S.D.Ga.1981).
 

 Only recently have the circuit courts entered into the good faith controversy.
 
 [9]
 
 Four relevant circuit court opinions, all announced in 1982, although not adopting a completely unified analysis, appear to follow the middle road, case-by-case approach. In
 
 In re Rimgale,
 
 669 F.2d 426 (7th Cir.1982), the Seventh Circuit rejected the argument that Congress intended routine eon-firmation of Chapter 13 plans when the subsection (a)(4) “best interests” test was met.
 
 Id.
 
 at 431. Instead, the court instructed the bankruptcy courts to make an independent evaluation of the good faith of the debtor’s plan. “This inquiry imposes a considerable responsibility on bankruptcy judges. And the conduct comprehended under the rubric ‘good faith’ will have to be defined on a case-by-case basis as the courts encounter various problems in the administration of Chapter 13’s provisions.”
 
 Id.
 
 (footnote omitted). The court further instructed that the issues of substantiality of payments and debtors’ best effort should be treated as elements of good faith when courts analyze debtors’ plans.
 
 Id.
 
 at 432.
 

 Four months after the
 
 Rimgale
 
 decision, the Ninth Circuit decided the case of
 
 In re Goeb,
 
 675 F.2d 1386 (9th Cir.1982). The
 
 Goeb
 
 court refused to impose a rigid standard that every Chapter 13 plan, to meet the requirements of good faith, must make substantial payments to unsecured creditors.
 
 Id.
 
 at 1389. In detailing the appropriate good faith analysis, the court suggested a case-by-case determination and stated:
 

 [W]e believe that the proper inquiry is whether the [debtors] acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the court must make its good-faith determination in the light of
 
 all
 
 mitigating factors.
 

 Id.
 
 at 1390 (footnote omitted).
 

 Still later in the year, the District of Columbia Circuit addressed the good faith issue in
 
 Barnes v. Whelan,
 
 689 F.2d 193 (D.C.Cir.1982). The
 
 Barnes
 
 court ruled that “section 1325(a)(3) does not require any par
 
 *316
 
 ticular level of repayment to unsecured creditors.”
 
 Id.
 
 at 195. The court adhered to a traditional understanding of good faith as meaning honesty of intention. Using this definition, the court affirmed two nominal payment plans where there was no evidence that the debtors “engaged in any specific misconduct, did not intend to carry out the plan, proposed the plan for an improper purpose, or did anything else to bring either case within the ambit of bad faith as traditionally interpreted.”
 
 Id.
 
 at 200.
 

 Twenty days after the
 
 Barnes
 
 case, the Fourth Circuit produced a more recent, and we think persuasive, analysis of the role of good faith in determining whether a debtors’ Chapter 13 plan deserves confirmation.
 
 See In re Deans,
 
 692 F.2d 968 (4th Cir.1982). Similar to earlier circuit opinions, the Fourth Circuit refused to adopt a per se rule of substantial payment as an element of good faith. In its analysis of the role of good faith, the
 
 Deans
 
 court stated:
 

 Congress never intended, of course, that Chapter 13 serve as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts. While no precise definition can be sculpted to fit the term “good faith” for every Chapter 13 case, we think the generally accepted definition of “good faith” as used in Chapter 11 of the old Bankruptcy Act, 11 U.S.C. § 766(4) (1976) (repealed), provides the general parameters:
 

 A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal of the plan....
 

 9 Collier on Bankruptcy 9.10 at 319 (14th ed. 1978) (citations omitted).
 

 As noted, repayment to unsecured creditors, although not a requirement for confirmation of every Chapter 13 plan, was one intended purpose of Chapter 13’s enactment. Failure to provide substantial repayment is certainly evidence that a debtor is attempting to manipulate the statute rather than attempting honestly to repay his debts. But substantiality of proposed repayment is but one factor to be considered in deciding if a plan has been proposed in good faith; a court must make its determination based on all militating factors.
 

 Id.
 
 at 972.
 

 We agree with the above-discussed circuit court opinions that subsection (a)(3) good faith does not impose a rigid and unyielding requirement of substantial payment to unsecured creditors. A per se minimum payment requirement to unsecured creditors as an element of good faith
 
 [10]
 
 would infringe on the desired flexibility of Chapter 13 and is unwarranted.
 
 [11]
 
 Nor should the courts perfunctorily conclude that good faith is achieved whenever the minimum requirements of subsection (a)(4) have been met. The good faith requirement demands a separate, independent determination. As indicated, in determining whether a debtor’s plan meets the section 1325(a)(3) confirmation requirement of good faith, we believe the proper inquiry should follow the analysis adopted by the Fourth Circuit: whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. The bankruptcy court must utilize its fact-finding expertise and judge each case on its own facts after considering all the circumstances of the case. If, after weighing all the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose or spirit of Chapter 13, confirmation must be denied.
 

 
 *317
 
 Certainly an important factor the courts must weigh in their analysis is the percentage of payment to unsecured creditors which the plan proposes. A low percentage proposal should cause the courts to look askance at the plan since repayment is one purpose of a Chapter 13 plan. However, the amount of the proposed repayment to unsecured creditors is only one of the many factors which the courts must consider in determining whether the plan meets the statutory good faith requirement. Other factors or exceptional circumstances might exist which would preclude a finding of bad faith even though only a nominal repayment to unsecured creditors is proposed.
 
 See, e.g., In re Bellgraph,
 
 4 B.R. 421 (Bkrtcy.W.D.N.Y.1980);
 
 In re Johnson,
 
 2 Collier Bankr.Cas.2d 552 (Bankr.N.D.Ill.1980).
 

 We make no attempt to enumerate all relevant considerations since the factors and the weight they are to be given will vary with the facts and circumstances of the case. However, in addition to the percentage of repayment to unsecured creditors, some of the factors that a court may find meaningful in making its determination of good faith are:
 

 (1) the amount of the proposed payments and the amount of the debtor’s surplus;
 

 (2) the debtor’s employment history, ability to earn and likelihood of future increases in income;
 

 (3) the probable or expected duration of the plan;
 

 (4) the accuracy of the plan’s statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
 

 (5) the extent of preferential treatment between classes of creditors;
 

 (6) the extent to which secured claims are modified; .
 

 (7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
 

 (8) the existence of special circumstances such as inordinate medical expenses;
 

 (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
 

 (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
 

 (11) the burden which the plan’s administration would place upon the trustee.
 

 See In re Deans,
 
 692 F.2d at 972;
 
 In re Kull,
 
 12 B.R. at 659;
 
 In re Heard,
 
 6 B.R. at 882;
 
 In re Iacovoni,
 
 2 B.R. at 267.
 

 A cursory examination of several factors of the plan in the instant case reveals an apparent lack of good faith. First, the debtors’ plan is scheduled to run for only fifteen months instead of the more common period of three years. This proposal to pay for only a limited time seems to relate with particularity to repaying only the secured creditors in full, or, in the case of the mortgage, to the point at which payments are current. Second, the debtors are seeking to discharge a student loan which is not dischargeable in Chapter 7 as well as loans from employee credit unions. Third, the plan ignores future income increases that Estus, a federal employee, is likely to receive. However, the bankruptcy and district courts did not make specific findings concerning the total circumstances of the case and did not determine whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13. Because the courts did not inquire adequately into the question of whether the appellees acted in good faith and because we decline to make a de novo determination of that issue, we reverse and remand for further proceedings consistent with this opinion.
 

 [1]
 

 . The district court stated:
 

 The good faith provision of 11 U.S.C. § 1325(a)(3) does not require any payment to all or any unsecured creditor in excess of the amount he would have been paid on a claim if the estate of the debtor had been liquidated under Chapter 7. [11 U.S.C. § 1325(a)(4)] Where an unsecured creditor would have received nothing under Chapter 7, he may not object that the plan lacks good faith because it proposes no judgment to unsecured creditors.
 
 In re Sadler,
 
 1 C.B.C.2d 935 (E.D.Ark. 1980).
 

 In re Estus,
 
 LR C 81 263, slip op. at 1 (E.D.Ark. Nov. 17, 1981).
 

 [2]
 

 .
 

 [T]he existing chapter 13 statute is basically and seriously defective at this time in five respects. First, it does not permit some individuals with regular income to qualify, such as small business owners or social welfare program recipients, because their principal incomes do not come from wages, salary, or commissions. Second, while the court can grant a hardship discharge, where for example the debtor becomes totally disabled, three years must elapse first. Third, secured creditors are dealt with erratically, tediously, and uncertainly, resulting from a hodgepodge of state and federal statutory provisions, bankruptcy and local rules, many conflicting reported cases and varied local customs. Fourth, accommodation codebtors in consumer finance are usually inexperienced relatives or coworkers, and present law does not provide a reasonable restraint on collection from them while the debtor’s case is pending. Fifth, formal creditor voting by literally counting written acceptances has unnecessarily imposed substantial expense for time, paper and uncertainty upon all concerned with only doubtful or marginal benefits.
 

 S.Rep. No. 989, 95th Cong., 2d Sess. 13,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5799.
 

 [3]
 

 . Prior law had limited eligible individuals to wage-earners. Chapter 13 relief is now available to any individual with regular income, whether from wages or other sources. Therefore, Chapter 13 debtors could include social security recipients, self-employed people, pensioners or professionals.
 
 See
 
 H.R.Rep. No. 595, 95th Cong., 2d Sess. 118-19,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 6078-80.
 

 [4]
 

 . A majority of unsecured creditors had to approve the debtor’s plan under the repealed law.
 
 See
 
 11 U.S.C. § 1052 (1976),
 
 repealed
 
 by Bankruptcy Reform Act of 1978. Pub.L. No. 95-598, 92 Stat. 2549 (1978). Although creditors can no longer reject a plan, they can object to confirmation of the plan at a confirmation hearing.
 
 See
 
 11 U.S.C. § 1324.
 

 [5]
 

 . Chapter 13 allows a discharge from all debts scheduled under the plan except alimony, child support and certain long term obligations.
 
 See
 
 11 U.S.C. § 1328(a). In the instant case, the broad Chapter 13 discharge affects the appel-lee’s obligation to repay the student loan he obtained from appellant. This loan would not be dischargeable in a Chapter 7 liquidating bankruptcy but is dischargeable in a Chapter 13 proceeding.
 
 See
 
 11 U.S.C. §§ 523(a)(8), 1328(a).
 

 [6]
 

 .
 

 The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7, is that it permits the debtor to protect his assets. In a liquidation case, the debtor must surrender his nonexempt assets for liquidation and sale by the trustee. Under chapter 13, the debtor may retain his property by agreeing to repay his creditors.
 

 H.R.Rep. No. 595, 95th Cong., 2d Sess. 118,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News at 6079.
 

 [7]
 

 . Section 1325(a) states:
 

 The court shall confirm a plan if—
 

 (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
 

 (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
 

 (3) the plan has been proposed in good faith and not by any means forbidden by law;
 

 (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
 

 (5) with respect to each allowed secured claim provided for by the plan—
 

 (A) the holder of such claim has accepted the plan;
 

 (B)(i) the plan provides that the holder of-such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C) the debtor surrenders the property securing such claim to such holder; and
 

 (6) the debtor will be able to make all payments under the plan and to comply with the plan.
 

 [8]
 

 .Some courts deny confirmation of nominal payment plans on a basis other than a good faith analysis. These courts reason that such a plan can be rejected for cause under 11 U.S.C. § 1307(c) because Congress did not intend confirmation of nominal payment plans.
 
 See, e.g., In re Wiggles,
 
 7 B.R. 373, 6 Bankr.Ct.Dec. 1326, 1332 (Bkrtcy.N.D.Ga.1980);
 
 In re Seman,
 
 4 B.R. 568, 572 (Bkrtcy.S.D.N.Y.1980).
 

 [9]
 

 . An earlier Eighth Circuit opinion,
 
 In re Terry,
 
 630 F.2d 634 (8th Cir.1980), addressed a related, but not identical issue. The debtor’s plan in
 
 Terry
 
 proposed no payments to any creditors. The court ruled that a Chapter 13 plan proposing to pay nothing to any creditor is not a good faith plan.
 
 See id.
 
 at 635. We note that the
 
 Terry
 
 court adopted the basic inquiry later employed by the Fourth Circuit in
 
 In re Deans,
 
 692 F.2d 968 (4th Cir.1982), that is, whether the plan constitutes an abuse of the provisions, purpose, or spirit of the applicable chapter.
 

 [10]
 

 . Congress provided a minimum repayment requirement in 11 U.S.C. § 1325(a)(4).
 

 [11]
 

 . Proposed legislation has been introduced in Congress concerning the role of good faith in confirmation of Chapter 13 plans.
 
 See
 
 S.Rep. No. 150, 97th Cong., 1st Sess. 18-19 (1981); H.R.Rep. No. 1195, 96th Cong., 1st Sess. 24-26 (1980). If Congress desires to include a per se substantial repayment requirement, it can do so.