**In re Thomas NIPPER, Debtor.**

**Bankruptcy No. 98–43041–293.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Aug. 14, 1998.

Steven C. Bublitz, Hazelwood, MO, for Debtor.

Norman Pressman, St. Louis, MO, for Automation Services, Inc.

John V. LaBarge, Jr., St. Louis, MO, Chapter 13 Trustee.

Office of the United States Trustee, St. Louis, MO.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, 157 and Local Rule 9.01 of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Thomas Nipper, Debtor, filed a petition under Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) on March 18, 1998.

---

2. Debtor's Schedule F listed a debt owed to "Automation Service" representing a "negligence judgment."

3. Automation Service, Inc., ("Automation Service") filed a Motion to Dismiss Debtor's case on May 15, 1998. Automation Service asserted that because the debt Thomas Nipper owed to it previously had been declared to be nondischargeable and because Nipper proposed paying only "a fraction" of the debt, Nipper's plan was not proposed in good faith.

4. Automation Service did not file an objection to Debtor's original or First Amended Chapter 13 Plan. The Court confirmed Debtor's First Amended Chapter 13 plan on June 18, 1998.

## FACTUAL BACKGROUND

From the testimony presented and exhibits offered at the June 18, 1998 hearing and the record as a whole, the Court makes the following findings;

1. From May 28, 1992 to April 30, 1993, Debtor's wife, Sharon Nipper, embezzled $43,237.32 from her employer, Automation Service. Because of her embezzling, Mrs. Nipper pleaded guilty to four counts of theft of more than $150.00, in 1994.

2. The Circuit Court of St. Louis County that accepted Mrs. Nipper's guilty plea sentenced her to five years of imprisonment. Mrs. Nipper's sentence was suspended and she was placed on probation. One condition of Mrs. Nippers's probation was that each month she pays $250.00 to Automation Service.

3. On November 28, 1995, the Circuit Court of the County of St. Louis, entered a civil judgment against Sharon Nipper and Thomas Nipper in favor of Automation Service. The Circuit Court's judgment of $29,-450.07 represented the sum Sharon Nipper had embezzled from Automation Service plus pre-judgment interest (net of the settlement Automation Service reached with a third party bank and other credits Automation Service owed to Sharon Nipper). The Circuit Court found Thomas Nipper jointly and severally liable for his wife's embezzlement after finding: that Thomas Nipper benefitted from his wife's embezzlement; that Thomas Nipper was or should have been aware of the ex-

traordinary purchases his wife made with the funds she obtained through embezzlement; that the Nipper family paid many bills with funds Sharon had embezzled; and that Thomas Nipper knew or should have known of his wife's unexplained access to substantial funds when she was embezzling from Automation Service. The Circuit Court also entered a $7,000.00 judgment against the Nippers as a result of the frivolous counterclaims they asserted against Automation Service.

4. The Nippers filed a joint Chapter 7 bankruptcy in 1994.

5. In an order dated October 23, 1996, Judge Barta of the United States Bankruptcy Court for the Eastern District of Missouri declared the debts Sharon and Thomas Nipper owed to Automation Service nondischargeable. On October 23, 1996, the Nippers owed Automation Service $36,450.07.

6. In 1996, the Nippers filed a petition under Chapter 13 of the Bankruptcy Code. Judge Schermer dismissed the Nippers' 1996 filing.

7. On his most recent bankruptcy petition, Thomas Nipper states that he is a grocery store manager and earns $44,199.96 a year. Debtor's petition lists three children as dependents and shows that Sharon Nipper receives $9,912.00 a year from a disability pension. Debtor supports his wife and three children.

8. Debtor scheduled unsecured debts of $32,500.00 owed to Automation Service and $3,148.61 owed to Chrysler Financial Corporation. Among Debtor's secured debts are a $55,134.56 loan secured by his family's home, a debt secured by a Buick automobile, and a debt owed to the Metropolitan Sewer District of St. Louis. Debtor scheduled a $300.00 debt to the Internal Revenue Service as a priority debt.

9. Under the confirmed Chapter 13 plan, Debtor's unsecured creditors will be paid ten percent (10%) of the value of their claims.

## DISCUSSION

Section 1325(a)(3) of the Bankruptcy Code directs a bankruptcy court to confirm a debtor's Chapter 13 plan if, in addition to meeting the requirements stated in section 1325's oth-

er subsections, it "has been proposed in good faith and not by any means forbidden by law." The Eighth Circuit Court of Appeals has held that determining whether a Chapter 13 plan has been proposed in good faith requires a bankruptcy court to consider "whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13." *United States v. Estus (In re Estus )*, 695 F.2d 311, 316 (8th Cir.1982). In *In re Estus,* the Circuit Court identified eleven factors, in addition to the percent of repayment, to guide bankruptcy courts in determining whether a Chapter 13 plan has been proposed in good faith. *Id.* at 317. In 1984, Congress amended the Bankruptcy Code and, through section 1325(b), authorized bankruptcy courts to confirm a debtor's plan if it lasts three years and the payments under that plan represent all of debtor's disposable income. The Eighth Circuit recognized that the 1984 amendments' " 'ability to pay' criteria subsumed most of the Estus factors and thus narrowed the focus of the good faith inquiry." *Handeen v. LeMaire (In re LeMaire )*, 898 F.2d 1346, 1349 (citing *Education Assistance Corp. v. Zellner,* 827 F.2d 1222, 1227 (8th Cir.1987)). To the extent that the eleven factors identified in *In re Estus* were not subsumed by the 1984 amendments, they survive. 898 F.2d at 1349.

In *In re LeMaire,* the Eighth Circuit affirmed the bankruptcy court's finding that the debtor's Chapter 13 plan was not proposed in good faith. *Id.* at 1352. The facts of *In re LeMaire* are as follows. Using a shotgun, LeMaire shot at Handeen nine times, hitting him five times. *Id.* at 1347. Handeen survived the assault. *Id.* After pleading guilty to aggravated assault, LeMaire served twenty-seven months in prison. *Id.* When he was released, LeMaire commenced a doctorate degree in experimental behavioral pharmacology. After earning his doctorate degree, LeMaire accepted a fellowship with the University of Minnesota. *Id.* Shortly after LeMaire received his degree, Handeen sued him for the civil damages he suffered as a result of the assault and LeMaire consented to the entry of a judgment against him. *Id.* LeMaire payed $3,000.00 of the consent judgment and filed bankruptcy soon after Handeen garnished his wages in an attempt to collect the judgment's $50,-362.50 balance. *Id.*

Although LeMaire scheduled a debt to his parents which was evidenced by a promissory note signed the day before he filed his bankruptcy petition, he did not schedule the contingent liability, related to his student loans, which would come due if he failed to fulfill the term of his fellowship. *Id.* at 1347, 1350. The bankruptcy court confirmed LeMaire's plan that proposed to pay creditors approximately 42% of their claims. *Id.* at 1347. The district court affirmed the bankruptcy court's decision but the Eighth Circuit, en banc, reversed it. *Id.*

The Eighth Circuit rejected Handeen's argument that the debt LeMaire owed him should be nondischargeable simply because it arose from a criminal act. *Id.* at 1348. The Circuit Court, however, held that LeMaire's Chapter 13 plan was not confirmable because it was not proposed in good faith as required by subsection 1325(a)(3). *Id.* at 1352. The Circuit Court applied the relevant *Estus* factors, most particularly: LeMaire's motivation and sincerity in seeking Chapter 13 relief, and whether the debt to be discharged was of a type that could be discharged in a Chapter 7 proceeding. *Id.* at 1350. In evaluating LeMaire's motivation and sincerity, the Circuit Court considered the public policy factors implicated by the discharge of the debt owed to Handeen. *Id.* at 1351. The *In re LeMaire* court recognized that " 'a Chapter 13 plan may be confirmed despite even the most egregious pre-filing conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditor's claims.' " *Id.* at 1352 (quoting *Neufeld v. Freeman,* 794 F.2d 149, 153 (4th Cir.1986)). Stating that "there is a particularly strong policy prohibiting the discharge of a debt resulting from a willful and malicious injury following an attempted murder," 898 F.2d at 1352, and pointing to the fact that LeMaire had not scheduled the contingent liability related to his fellowship, the Eighth Circuit concluded that LeMaire had not demonstrated god faith in seeking Chapter 13 protection. *Id.*

In *Noreen v. Slattengren*, 974 F.2d 75 (8th Cir.1992), the Eighth Circuit was again called upon to evaluate a debtor's good faith in proposing a Chapter 13 plan. In that case, the Debtor, Noreen, was sued by Slattengren approximately a year before he filed bankruptcy. *Id.* Slattengren alleged that Noreen had sexually assaulted her when she was a child. *Id.* Eleven days before Slattengren's case was to be tried, Noreen filed a bankruptcy petition. *Id.* Noreen proposed a Chapter 13 plan in which he would pay $200.00 a month for three years. *Id.* After Slattengren objected to his plan, Noreen increased the proposed monthly payment under his plan to $500.00. *Id.* at 76. The bankruptcy court determined that Noreen's Chapter 13 plan had been filed in bad faith. *Id.* The bankruptcy court based its finding of bad faith on three factors: that Noreen filed his bankruptcy eleven days before Slattengren's case was to be tried and so prevented her from having her day in court; that Noreen filed his bankruptcy in anticipation of an adverse judgment in Slattengren's state court law suit; and that Noreen's first plan proposed paying his creditors very little. *Id.* at 77. The Eighth Circuit upheld the bankruptcy court's determination. *Id.* The Circuit Court found that the three *Estus* factors cited by the bankruptcy court provided sufficient support for that court's determination that Noreen's plan had been filed in bad faith. *Id.* In the final string citation of its opinion, the *Noreen* court insinuates that public policy affected its determination that the bankruptcy court had not erred in holding that Noreen proposed his plan in bad faith. *Id.*

■ The Court finds this case to be distinguishable from *Noreen* and *In re LeMaire* in that the wrongful conduct giving rise to Thomas Nipper's debt to Automation Service, embezzlement, is not as morally repugnant as either attempted murder or sexual assault of a minor. Nipper's case is further distinguished from Noreen's by the fact that, unlike Noreen, Nipper did not file his case in an anticipation of an adverse verdict in a civil case. Nipper argues in his memorandum, and the Court accepts that an impending foreclosure of Debtor's house prompted his filing. The fact that Debtor paid over $2,300.00 to Automation Service, albeit through garnishment, lends credibility to his contention that an impending foreclosure and not Automation Service's judgment motivated his filing. Moreover, Thomas Nipper's filing did not deprive Automation Service of its day in court.

■ The amount of income committed to pay his creditors through his Chapter 13 plan also distinguishes Thomas Nipper's case from Noreen's. In contrast to Noreen who, at most committed forty percent of his disposable income to his creditors under his initial Chapter 13 plan, Nipper proposed paying his entire disposable income to his creditors. The Court is mindful that the determination of good faith is a separate inquiry from subsection 1325(b)'s "ability to pay" criteria but, believes, just as the *Noreen* court did, 974 F.2d at 77, that the percent of disposable income a debtor's plan proposes to pay to his creditors evidences the debtor's sincerity and motivation in filing Chapter 13.

The case at bar is also factually distinguishable from *In re LeMaire*. Unlike LeMaire, who failed to schedule a contingent liability, Nipper has not been alleged to have failed to schedule a significant liability. Additionally, Nipper has not included any debts on his schedules, like LeMaire's debt to his parents, that cause the Court to question the accuracy of his schedules.

The Court notes that by allowing Debtor's case to proceed, all of his creditors will share in the orderly distribution of his income. This result is in accord with the Bankruptcy Code's policy in favor of equitably distributing assets among creditors. The Court also finds it significant that Automation Service did not object to the confirmation of Debtor's Chapter 13 plan. The Court finds that Nipper's plan was filed in good faith.