**In the Matter of Sandra D. WHITLOCK, Debtor.**

**No. 03–31112 RFH.**

United States Bankruptcy Court, M.D. Georgia, Athens Division.

April 28, 2004.

Ernest V. Harris, Athens, GA, for Debtor.

Stephen L. Noel, Monroe, GA, for James E. Dollar, individually and as Executor of the Estate of James Nimrod Dollar, and Bobby Dollar.

Tony Coy, Office of the Chapter 13 Trustee, Macon, GA, for Chapter 13 Trustee.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

Sandra D. Whitlock, Debtor, filed on June 26, 2003, a petition under Chapter 13

of the Bankruptcy Code. Debtor also filed her proposed Chapter 13 Plan on June 26, 2003. On October 6, 2003, James E. Dollar and Bobby Dollar, Objectors,[1] filed an objection to confirmation of Debtor's Chapter 13 Plan. .

A hearing on confirmation of Debtor's Chapter 13 Plan was held on February 26, 2004. At the hearing, Debtor, on the record, modified her Chapter 13 Plan to provide that the term of her plan would be increased to four years. Objectors object to confirmation of the modified plan. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Debtor and Objectors are sister and brothers. Their father, James Nimrod Dollar, died on June 14, 1997. In their father's will, Debtor was named as executrix of his estate. Letters testamentary were issued on August 5, 1997, to Debtor by the Probate Court of Gwinnet County, Georgia. Debtor was immediately sworn in as executrix. Debtor later breached her fiduciary duty and was removed as executrix by the Probate Court by order entered on August 14, 1998. Debtor's older brother, James E. Dollar, was appointed as successor executor by the Probate Court. James E. Dollar testified that his father's estate "is still open".

Objectors filed a complaint for damages against Debtor in the Superior Court of Walton County, Georgia. Objectors sought to recover damages they suffered because of Debtor's improper handling of their father's estate. The Superior Court, after a bench trial, entered a judgment dated May 23, 2003, against Debtor. Objectors were awarded actual damages, punitive damages, and attorney's fees.[2]

---

1. The Objectors are James E. Dollar and Bobby Dollar as individuals and James E. Dollar

in his capacity as Executor of the Estate of James Nimrod Dollar.

2. The Superior Court determined that: (1)

Debtor made no payments on these obligations before she filed for bankruptcy relief.

Debtor filed her Chapter 13 case on June 26, 2003. Debtor listed on Schedule D Objectors' judicial lien as a secured claim. The Court entered an order on October 30, 2003, avoiding Objectors' judicial lien to the extent it impaired Debtor's exemptions.[3] Debtor's schedules do not list any nonexempt property. Debtor proposes to pay approximately 6 percent of her obligations to Objectors through her modified Chapter 13 Plan.

The Court notes that Debtor's obligations to Objectors may be nondischargeable in a Chapter 7 bankruptcy case. 11 U.S.C.A. § 523(a)(2),(4), and (6) (West 1993). The law is clear, however, that Debtor's obligations are dischargeable under the superdischarge provisions of Section 1328(a) of the Bankruptcy Code upon completion of her Chapter 13 plan. A leading Chapter 13 treatise states in part:

> Other than alimony and support ... student loans ... drunken driving ... and restitution or a criminal fine ... the long list of exceptions to discharge in § 523(a), applicable in Chapter 7, Chapter 12 and individual Chapter 11 cases, is not applicable in Chapter 13 at completion of all payments. In particular, claims for fraud, misrepresentation, willful and malicious misconduct and defalcation in a fiduciary capacity—the so-called "fraud exceptions" to discharge given special treatment in § 523(c)—*are*

dischargeable after completion of payments in a Chapter 13 case.

4 K. Lundin, *Chapter 13 Bankruptcy, 3d Ed.,* § 344.1, p. 344–4, (2000 & Supp.2002).

In *Pennsylvania Dept. of Public Welfare v. Davenport,*[4] the United States Supreme Court stated:

> Accordingly, Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all, of § 523(a)'s exceptions to discharge. See 5 Collier on Bankruptcy ¶ 1328.01[1][c] (15th ed. 1986) ("[T]he dischargeability of debts in chapter 13 that are not dischargeable in chapter 7 represents a policy judgment that [it] is preferable for debtors to attempt to pay such debts to the best of their abilities over three years rather than for those debtors to have those debts hanging over their heads indefinitely, perhaps for the rest of their lives") (footnote omitted).

495 U.S. at 563, 110 S.Ct. 2126.

Thus, Debtors obligations to Objectors are dischargeable in bankruptcy upon the completion of Debtor's Chapter 13 plan.

The Court now turns to decide whether Debtor's modified Chapter 13 plan is confirmable. Section 1325(a) of the Bankruptcy Code provides that the Court shall confirm a plan if certain requirements are satisfied. Objectors contend that Debtor's Chapter 13 plan does not meet the disposable income test of Section 1325(b) of the Bankruptcy Code.[5] Disposa-

---

3. 11 U.S.C.A. § 522(f) (West Supp.2003).

Debtor sold to herself real estate of her father's estate against the advice of her own counsel; (2) Debtor continued to write checks to herself from the estate's account after she was removed as executrix; (3) Debtor received more than her share of her father's estate; and (4) Debtor refused to relinquish the estate's records to the successor executor.

4. 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990).

5. 11 U.S.C.A. § 1325(b) (West 1993 & Supp. 2003).

> § 1325. Confirmation of Plan
>
> · · ·
>
> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the

ble income means income which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor. 11 U.S.C.A. § 1325(b)(2)(A) (West 1993 & Supp.2003). *Collier on Bankruptcy* states:

> When an objection to confirmation is filed pursuant to section 1325(b)(1) and the plan does not satisfy the full payment test of subsection 1325(b)(1)(A), subsection 1325(b)(1)(B) requires the court to determine whether the debtor has committed to the plan all of the debtor's projected disposable income for a three-year period beginning on the date the first plan payment is due.

8 *Collier on Bankruptcy* ¶ 1325.08[4][a] (15th ed. rev.2003).

The evidence shows that Debtor is employed full-time as a bookkeeper at Southeastern Hydraulics, Inc. Debtor's take-home pay is $486 per week. Debtor also works part-time at Big Lot Stores, Inc., and has take-home pay of $101 per week. Debtor's total monthly take-home pay is $2,543.[6] Debtor's weekly income at her confirmation hearing was about $33 less than when she filed her Chapter 13 case.

Debtor's Schedule J shows monthly living expenses totaling $2,292. Debtor's thirty-one-year-old daughter has no income and lives with Debtor. Debtor's budget is very conservative showing nothing for medical and dental expenses, home maintenance, recreation, or entertainment. The Court is persuaded that Debtor's monthly living expenses of $2,292 are reasonably necessary for her maintenance or support. The Court is persuaded that Debtor, during the four year term of her Chapter 13 plan, will have expenses not contemplated in her budget.

Debtor filed her Chapter 13 plan to save her residence and to deal with other obligations. Debtor's monthly take-home pay exceeds her expenses by $251. Debtor's modified Chapter 13 plan proposes to pay $125 per month to the Chapter 13 trustee. The term of the proposed plan is four years. Debtor is current on her Chapter 13 plan payments.

The Court is persuaded that Debtor's proposed Chapter 13 plan payment of $125 per month is payment of her disposable income. The Court is persuaded that the additional $126 will be needed to pay unbudgeted and reasonably necessary expenses for her maintenance or support. The Court notes that section 1325(b)(1)(B) only requires payment of disposable income for three years. Debtor's Chapter 13 plan provides for payment for four years. Thus, Debtor's Chapter 13 plan is

confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

**(A)** the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

**(B)** the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

**(2)** For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

**(A)** for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contributions" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and

. . . .

**6.** Debtor's total monthly take-home pay was calculated by multiplying Debtor's weekly total take-home-pay ($587) by fifty-two (weeks) and dividing by twelve (months).

for a longer term than required by the disposable income test.

 Objectors also contend that Debtor's Chapter 13 plan is not proposed in good faith,[7] and is in fact proposed in bad faith. Objectors however, do not assert that Debtor's Chapter 13 plan should be dismissed as a bad faith filing. In *Kitchens v. Georgia Railroad Bank and Trust Co. (In re Kitchens),*[8] the Eleventh Circuit Court of Appeals set forth the factors this Court must consider in deciding good faith. The circuit court stated:

> Five circuit court opinions, all announced in 1982, while not completely uniform, adopt a middle road between the "best interests" and "best efforts" tests. By this middle road, the facts of each bankruptcy case must be individually examined in light of various criteria to determine whether the chapter 13 plan at issue was proposed in good faith. *In re Estus,* 695 F.2d 311 (8th Cir.1982); *Deans v. O'Donnell,* 692 F.2d 968 (4th Cir.1982); *Barnes v. Whelan,* 689 F.2d 193 (D.C.Cir.1982); *In re Goeb,* 675 F.2d 1386 (9th Cir.1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982).

> The courts in all these opinions refuse to adopt a per se rule that a debtor's failure to make substantial repayments demonstrates lack of good faith:

> > Congress has nowhere in the statute provided a definition of the term "good faith." The legislative history is similarly silent on the point. . . .
> > . . . [H]ad Congress intended that such repayment be a condition precedent to confirmation of all Chapter 13 plans it could have explicitly so stat-

ed. . . . Congress did in fact explicitly set a minimum repayment level for unsecured creditors in sec. 1825[(a)(4)], but that limit is not one requiring substantial repayment in every plan. . . .

> *Deans v. O'Donnell,* 692 F.2d at 969–71. See *In re Goeb,* 675 F.2d at 1388.

> In three of these opinions, circuit courts found the general parameters of the meaning of "good faith" in a widely accepted definition of the term as it was employed in chapter 11 of the old Bankruptcy Act:

> > A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal.

> 9 *Collier on Bankruptcy* ¶ 920 at 319 (14th ed.1978); cited in *In re Estus,* 695 F.2d at 316; *Deans v. O'Donnell,* 692 F.2d at 972; *In re Rimgale,* 669 F.2d at 431. . . .

> The courts have elaborated upon this basic inquiry noted by *Collier.* In compiling factors to be considered by bankruptcy courts in their determinations of debtors' good faith, the Eighth Circuit added to a list already provided by the district court in the present case. The district court had correctly declared that a bankruptcy court must consider but not be limited to the following:

> (1) the amount of the debtor's income from all sources;

> (2) the living expenses of the debtor and his dependants;

---

**7.** 11 U.S.C.A. § 1325(a)(3) (West 1993) (court shall confirm a plan if the plan has been proposed in good faith and not by any means forbidden by law).

**8.** 702 F.2d 885 (11th Cir.1983).

(3) the amount of attorney's fees;

(4) the probable or expected duration of the debtor's Chapter 13 plan;

(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

(6) the debtor's degree of effort;

(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

(8) special circumstances such as inordinate medical expense;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

(11) the burden which the plan's administration would place on the trustee.

[In re Kull,] 12 B.R. [654] at 659 [(S.D.Ga.1981)]. The Eighth Circuit court amplified the tenth factor, stating that the bankruptcy court should consider the extent to which the claims are modified and the extent of preferential treatment among classes of creditors. In re Estus, 695 F.2d at 317. All but one of the circuits note that substantiality of the repayment to the unsecured creditors should be one of the factors considered. In re Estus, 695 F.2d at 317; Deans v. O'Donnell, 692 F.2d at 972; In re Goeb, 675 F.2d at 1390; In re Rimgale, 669 F.2d at 432.

Like the court in In re Estus, we do wish to note that other factors or exceptional circumstances may support a finding of good faith, even though a debtor has proposed no or only nominal repayment to unsecured creditors.

. . .

The Eighth Circuit court also added to the list consideration of the type of debt to be discharged and whether such debt would be nondischargeable under chapter 7. : . . This is yet another factor to which bankruptcy courts should be alert.

702 F.2d at 888–89.

The Court will now apply the *Kitchens* factors to the facts in the case at bar.

1. *Amount Of Debtor's Income From All Sources.*

Debtor has a full-time job and a part-time job. Her total monthly take-home pay is $2,543. Debtor's monthly living expenses are $2,292. Thus Debtor has excess income of $251. Debtor proposes to pay $125 of her excess income into her Chapter 13 plan. Debtor's budget is very conservative showing nothing for medical and dental expenses, home maintenance, recreation, or entertainment. The Court is persuaded that Debtor, during the four year term of her Chapter 13 plan, will have expenses not contemplated in her budget. The Court is persuaded that Debtor's monthly Chapter 13 plan payment of $125 is payment of her disposable income. The additional $126 will be needed to pay unbudgeted and reasonably necessary expenses for her maintenance or support.

2. *Living Expenses*

Debtor's living expenses set forth in her budget are very conservative. Debtor will have to sacrifice in order to pay her living expenses and make her plan payments.

3. *Amount Of Attorney's Fees*

Debtor's attorney has agreed to represent Debtor for $1,250. This is $100 more

than the regularly awarded fee of $1,150 for a Chapter 13 case by this Court. Debtor's attorney has expended much more attorney time than would be needed in a routine case. The Court is persuaded that the attorney's fee is reasonable for the attorney services rendered in Debtor's case.

### 4. Probable Or Expected Duration Of Debtor's Chapter 13 Plan

The maximum term for a Chapter 13 plan is five years. 11 U.S.C.A. § 1322(d) (West Supp.2003). The term of Debtor's plan is four years. This is one year longer than the required three years for the disposable income test.

### 5. Motivation and Sincerity of Debtor in Filing Chapter 13 Case

Debtor filed for Chapter 13 relief to save her residence. Debtor's daughter lives with her in the residence. One of the primary reasons why Congress created Chapter 13 of the Bankruptcy Code was to afford debtors an opportunity to save their residences. Debtor filed her Chapter 13 case just one month after Objectors obtained their state court judgment. Debtor made no payments on this obligation before she filed for bankruptcy relief.

### 6. Degree Of Debtor's Effort

Debtor is working two jobs. Her budget shows no luxury expenses and contains only expenses needed for her maintenance or support. Debtor will have to sacrifice in order to pay her living expenses and make her plan payments for four years.

### 7. Debtor's Ability To Earn

Debtor is working two jobs. There is no evidence that Debtor's employment will change or that her income will increase.

### 8. Special Circumstances Such As Incidental Medical Expense

Debtor's Chapter 13 filing is an attempt by her to save her residence.

### 9. Prior Bankruptcy Filings

This is the first case filed by Debtor under the Bankruptcy Code.

### 10. Circumstances Under Which Debtor Contracted Her Debts And Her Demonstrated Bona Fides, Or Lack Of Same, In Dealing With Her Creditors

There is no question that Debtor breached her fiduciary duty when she was serving as executrix of her father's estate. She received more than her share of her father's estate. Objectors received less than their shares. The Superior Court awarded Objectors actual damages, punitive damages, and attorney's fees.

*Collier on Bankruptcy* states:

Only if there has been a showing of serious debtor misconduct or abuse should a chapter 13 plan be found lacking in good faith. In examining whether there has been a serious abuse of the Code, however, many courts have continued to use the fact-sensitive "all of the circumstances" type of analysis developed by the appellate courts prior to the 1984 amendments. Thus, for example, while it is not automatically bad faith to seek discharge in chapter 13 debts which were not discharged in a prior chapter 7 case, in particular cases additional circumstances may warrant a finding that the plan is not filed in good faith.

8 *Collier on Bankruptcy* ¶ 1325.04[1] (15th ed. rev.2003).

In *Mason v. Young (In re Young)*,[9] the Tenth Circuit Court of Appeals stated:

> The policy of allowing a fresh start does not license debtors to lightly rid themselves of the burden of their indebtedness without an honest attempt at repayment. Yet neither does that policy compel debtors, in Dickensian fashion, to labor for the rest of their lives under the crushing weight of gigantic debt; under our law, the world is not to be made a debtor's prison by a lifelong sentence of penury.

237 F.3d at 1178.

11. *Burden Which The Plan's Administration Would Place On Trustee*

There is no showing that administration of Debtor's Chapter 13 plan would place a burden on the Chapter 13 trustee.

The facts and legal issues in the case at bar are similar to those in *In re Davis*.[10] In that case the Chapter 7 debtor obtained a power of attorney to handle the financial affairs of her incompetent father. The debtor began using her father's funds and "good name" for her personal benefit. The debtor admitted that she "did wrong". The debtor's total obligations to her father probably exceeded $100,000. The debtor filed for bankruptcy relief almost immediately after her sister was appointed legal guardian for their father.

The debtor, through her Chapter 13 plan, proposed to cure an arrearage on her residence and to pay a maximum dividend of twenty percent to unsecured creditors, including the obligations to her father. The debtor proposed to pay all of her disposable income into her Chapter 13 plan. The plan's term was five years which is the maximum allowed by the Bankruptcy Code. The Court confirmed the debtor's Chapter 13 plan, noting that the payments fairly reflected the debtor's ability to pay and would impose a hardship over the term of the plan.

The Chapter 13 trustee contended that confirmation would allow the debtor to carry out her scheme to defraud her father. The Court noted that the debtor testified under oath that she wrongfully took funds from her father when he was incompetent. The Court noted that the debtor's bankruptcy would not stay the commencement or continuation of a criminal action or proceeding against the debtor and that a debt for restitution included in a criminal sentence would be nondischargeable under Chapter 13.

In *Waldron v. Shell Oil (In re Waldron)*,[11] the Eleventh Circuit Court of Appeals stated:

> The Bankruptcy Code expressly provides that a bankruptcy court may not confirm a Chapter 13 plan unless "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3) (1982). Indeed, "the 'good faith' requirement of § 1325(a) is the only safety valve available through which plans attempting to twist the law to malevolent ends may be cast out. The good faith test should be used accordingly." *In re Leal*, 7 B.R. 245, 248 (Bankr.D.Colo.1980).

785 F.2d at 939.

The circuit court also stated:

> We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its

---

9. 237 F.3d 1168 (10th Cir.2001).

10. *In re Davis*, Ch. 13, Case No. 98–52127 (Bankr., Oct. 16, 1998)(Hershner, J.).

11. 785 F.2d 936 (11th Cir.), *cert. dismissed*, 478 U.S. 1028, 106 S.Ct. 3343, 92 L.Ed.2d 763 (1986).

intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, as we do here, confirmation must be denied.

Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse.

The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law.

785 F.2d at 941.

Turning to the case at bar, the Court does not condone Debtor's conduct that resulted in the entry of a judgment against her by the state court. Debtor clearly made serious errors while serving as executrix of her father's estate. Still, the Court is not persuaded that her conduct was so abusive that confirmation of her Chapter 13 plan should be denied. The Court, from the evidence presented, does not find that Debtor had an evil intent to harm Objectors.

Objectors also argue that Debtor failed to disclose all her assets. Debtor owned a cemetery lot that was not listed in her bankruptcy schedules. Debtor testified that she forgot she owned the cemetery lot. The cemetery lot has now been disclosed to the Chapter 13 trustee. The Court is persuaded that Debtor honestly forgot about the cemetery lot. Since it has now been disclosed, Debtor's oversight should not bar confirmation.

The Chapter 13 trustee originally objected to confirmation of Debtor's Chapter 13 plan. The Chapter 13 trustee withdrew her objection when Debtor extended the term of her Chapter 13 plan from three years to four years. The Chapter 13 trustee now recommends confirmation of Debtor's modified Chapter 13 plan.

The Court is mindful of the strained feelings between the Objectors and Debtor. Still the Court is persuaded that Debtor is proposing her Chapter 13 plan in good faith to save her residence, and to deal with her obligations as permitted by the Bankruptcy Code.

An order in accordance with this memorandum opinion will be entered this date.