**In re Ronnie A. TERRY, Debtor.**

**No. 2:01–BK–70759.**

United States Bankruptcy Court,
W.D. Arkansas,
Fort Smith Division.

June 6, 2002.

---

12. *See In re Roti, supra* note 6; *In re Randy,* 189 B.R. at 443.

**242**

James O. Cox, Fort Smith, AR, for debtor.

Thomas E. Robertson, Jr., Fort Smith, AR, for Farmers Bank of Greenwood.

R. Ray Fulmer, II, Fort Smith, AR, Chapter 7 Trustee.

**ORDER DENYING DEBTOR'S MARCH 4, 2002, AMENDED CHAPTER 13 PLAN AND OVER–RULING IN PART AND GRANTING IN PART OBJECTIONS TO DEBTOR'S EXEMPTIONS AND DENYING DEBTOR'S EXEMPTION CLAIM AS TO HIS 1/5 INTEREST IN 80 ACRES OF LAND**

ROBERT F. FUSSELL, Bankruptcy Judge.

## I. BACKGROUND, JURISDICTION, AND FINDINGS OF FACT

Pending before the Court is an amended chapter 13 plan [the plan] filed by the debtor, Ronnie A. Terry. Objections to the plan have been filed by Farmers Bank of Greenwood, Arkansas [the bank], and R. Ray Fulmer II, the chapter 7 trustee in

1. The Court may take judicial notice of its own orders and of records in a case before it. Fed.R.Evid. 201; *Elliott v. Papatones (In re Papatones)*, 143 F.3d 623, 624 (1st Cir.1998).

the debtor's case [the trustee]. Both the bank and trustee objected to the debtor's pending plan on the basis that the plan has not been proposed in good faith and is forbidden by law, in violation of 11 U.S.C. § 1325(a)(3). They also assert that, as of the effective date of the plan, the value of property to be distributed under the plan to each allowed unsecured claim is less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7, in violation of § 1325(a)(4). The bank and trustee have objected to the debtor's claims of exemptions.

The Court held an evidentiary hearing on April 8, 2002, at the conclusion of which it took the matter under advisement. This Court has subject matter jurisdiction over the above proceedings pursuant to 28 U.S.C. §§ 157 and 1334 and the proceedings are core proceedings as defined in 28 U.S.C. § 157(b)(2)(A)(B) and (L).

■ In order to determine the above issues, it is necessary to review the debtor's bankruptcy case since its inception on May 29, 2001. The following is a chronology of what has materially transpired in the debtor's pending case: [1]

May 29, 2001 The debtor filed a chapter 7 liquidation case. Schedule "I" reflects current monthly income (estimated) of $1299.99. Schedule "J" lists current monthly expenses (estimated) of $2052.91. Current monthly expenses exceed income in the amount of $752.92. Schedule "A" lists no real estate owned by the debtor. Schedule "C" reflects no real estate claimed as exempt. The Statement of Financial Affairs item number 10 reflects no transfer of assets within one year of the commencement of the case. Schedule "C" also lists carpenter's tools with a value of $1600.00 as exempt.[2] Schedule

2. Farmers Bank Post–Trial Brief at page 5 states that on a financial statement the debtor gave to the bank, he listed tools as having a value of $10,000.00. The bank cites to Farmer's Exhibit No. 4. This exhibit was never

"F" lists four unsecured debts totaling $211,846.91 (Farmers Bank had two claims totaling $177,834.26).

June 25, 2001 — Section 341(a) meeting of creditors. At this meeting the trustee asked the debtor if he had transferred any property within the past two years. The debtor testified that he had sold his 1/5 interest in an 80 acre farm to his two partners for $15,000.00 cash. The farm was not income producing; it was just used for hunting. He also testified he sold a boat, motor, and trailer to Tony and Marsha Milan for $2500.00. Tony Milan was his brother-in-law. In 1993, the debtor paid $25,000.00 for the boat, motor, and trailer. He said it may bring $4500.00 or $5000.00 in today's market. Finally, he testified he had sold an old 1988 Ford truck, but could not remember what he had sold it for. The trustee requested the debtor gather his documents evidencing the above transactions, as well as a list of carpenter's tools, and turn them over to the trustee. He then continued the meeting.

August 10, 2001 — Continued 341(a) meeting of creditors. The debtor attended and testified that he had an agreement with his two partners in the farm that he would sell his 1/5 interest for $15,000 .00. Each partner paid him $1400.00 with the balance to be paid when they could. The debtor had signed a deed but had not delivered it to his partners because they still owed the debtor money. At the time this sale occurred, the debtor was having financial problems and could not get the property in his name because he could not get it insured in his name. Consequently, he put it in the partners' names. The debtor testified that he had sold the 1988 Ford truck for $1500.00 and the boat, motor, and trailer for $2500.00.

September 20, 2001 — The debtor filed his amended chapter 7 schedules. On amended Schedule "A" the debtor listed a 1/5 interest in the 80 acre farm. On amended Schedule "C" the debtor claimed his ownership interest as exempt under 11 U.S.C. § 522(d)(5) in the amount of $8625.00, and as having a market value of $15,000.00. On his Statement of Financial Affairs, item number 10, he listed a sale of his 1/5 interest in the 80 acres to Hal Stewart and Wayland Parker on May 30, 2000 for $15,000.00, but stated the deed was not delivered because a balance of $12,000.00 was still owed. He also listed a boat, motor, and trailer sold to Tony Milam for $2500.00 cash on July 1, 2000, and a 1988 Ford truck he sold to Milam for $1500.00 cash in December 1999.

October 23, 2001 — The trustee filed his objection to the exemptions filed by the debtor. Specifically, the trustee stated that the debtor was not entitled to an exemption of $8625.00 because he failed to list the exemption on his schedules, and only revealed his ownership of the property after the trustee had inquired as to the transfers the debtor had made.

October 23, 2001 — Farmers Bank and the trustee filed an adversary proceeding against the debtor alleging that the debtor violated 11 U .S.C. § 727(a)(2)(A) by intentionally transferring his 1/5 interest in 80 acres without adequate consideration within one year of the bankruptcy, and § 727(a)(4) by giving a false oath in his schedules and at the first meeting of creditors as to his interest in real property; the transfers of the boat, motor, trailer, and 1988 Ford truck; and the true value of his carpenter's tools.

November 11, 2001 — The trustee filed an amended objection to exemptions adding the value of the carpenter's tools.

November 23, 2001 — The debtor filed an answer to the adversary proceedings denying all allegations of fraud.

December 3, 2001 — The debtor filed a motion to convert his chapter 7 case to a chapter 13 case.

December 18, 2001 — The debtor filed amended schedules in which he changed amended Schedule "C" to reflect an exemption of $6650.00 in his 1/5 interest in the 80 acre farm,[3] Schedule "I" to reflect his current monthly income as $2011.95, and Schedule "J" to reflect current monthly ex-

offered, or received, into evidence. Nor is there evidence that the debtor testified at the § 361(a) meeting of creditors that the tools were worth $3000.00 at the time, as stated by the bank.

3. The debtor's September 20, 2001, amended Schedule "C" claimed an exemption of $8625.00.

penses of $1471.00, leaving excess monthly income of $540.95.[4]

| | |
|---|---|
| December 18, 2001 | The debtor filed a chapter 13 plan in which he proposed to pay the chapter 13 trustee $540.95 per month for 36 months. The plan lists Mazda Credit as the only secured creditor, with a claim of $7341.57. The collateral is valued at $10,000.00, and the debtor proposed to pay 10% interest on the secured claim and a monthly payment of $497.21. Unsecured creditors are to be paid pro-rata and the percentage pay out to unsecured creditors is projected at 5.07%. |
| January 9, 2002 | Objection to confirmation of the plan filed by the bank. |
| January 10, 2002 | Objection to confirmation of the plan by the chapter 7 trustee. |
| March 4, 2002 | The debtor filed an amended chapter 13 plan. The payment to the secured creditor was changed to reflect a correct monthly payment of $271.91. No other changes were made, and the monthly payment to the chapter 13 trustee remained at $540.95. |
| March 29, 2002 | Objection to confirmation of the March 4, 2002, amended chapter 13 plan filed by the bank. |

At the hearing held on April 8, 2002, the debtor testified that he was in the building business until 1998, and is currently employed by RSM Supply, Inc. as an outside salesman. He had back surgery in September 2000, at which time he had to switch from physical labor to outside sales. He missed several months of work as a result of his back surgery. When he filed his chapter 7 petition on May 29, 2001, he had been employed at DMJ Construction for a period of three months as a salesperson. He filed his motion to convert his case to a chapter 13 reorganization case in December 2001 because of his new job with RSM Supply, Inc. According to the debtor, this accounted for the change in his monthly income and expenses: he was making more money at his new employment and had reduced his living expenses, such as rent and food.[5]

The debtor testified that at the time he prepared his original schedules he completely forgot to list his interest in the 80 acre farm. Only when the trustee asked him about the transfers did he remember that he had failed to list his real estate interest. He claimed the property as exempt because his partners had never finished paying him the balance owed, and he had not delivered the deed. Received into evidence as Debtor's Exhibit No. 1 is a Quit Claim Deed dated May 30, 2000, wherein the debtor deeded his 1/5 interest to his partners. He also told the trustee at the first meeting of creditors about the sale of his boat, motor, and trailer to Milam for $2500.00. The Court received into evidence as Debtor's Exhibit No. 3, a Certificate of Title to a 1993 boat dated July 6, 2000, in the name of Tony Milam. The Court also received into evidence as Farmers's Exhibit No. 2, an appraisal by Barling Boat Sales dated July 10, 2001, appraising a 1993 Ranger boat, trailer, and Johnson 175 horsepower motor for $7800.00. The debtor testified he sold a 1988 Ford to Milam for $1500.00, and the Court received into evidence as Debtor's Exhibit No. 2, a Certificate of Title to a 1988 Ford in the name of Tony Milam dated December 22, 1999. The debtor tes-

---

4. The debtor's May 29, 2001, Schedule "I" reflects current monthly income of $1299.99 and Schedule "J" reflects current monthly expenses of $2052.91, leaving a negative monthly income of $752.92.

5. Attached to this opinion is the debtor's May 29, 2001, Schedule "I" current estimated monthly income and the debtor's December 18, 2001, amended Schedule "I" current estimated monthly income. Also attached is the debtor's Schedule "J" May 29, 2001, current estimated monthly expenses and amended Schedule "J" December 18, 2001, current estimated monthly expenses. These attachments are incorporated as findings of fact herein.

tified that he was paid in cash for the boat, motor, trailer, and Ford truck.[6]

The trustee testified that the debtor failed to disclose on his May 29, 2001, schedules and Statement of Financial Affairs the sale of his 1/5 interest in real estate, and the transfer of his boat, trailer, motor, and 1988 truck. It was not until the trustee made an inquiry at the June 25, 2001, § 361(a) meeting of creditors that the debtor disclosed these transfers.

At the end of the hearing, the record was left open to receive into evidence the debtor's checking account statements reflecting deposits and withdrawals in his account at the First National Bank of Greenwood, Arkansas. The debtor testified that he did not operate on a cash basis, all of his income went into his bank account, and he paid his expenses by check except for a little cash. The following is a monthly summary of the debtor's deposits and withdrawals from his checking account from February 2001 through February 2002.

| Month | Deposits | Withdrawals |
|---|---|---|
| February 2001 | 5317.25 | 4696.21 |
| March 2001 | 4035.13 | 3228.96 |
| April 2001 | 2284.70 | 3167.32 |
| May 2001 | 2756.80 | 2647.98 |
| June 2001 | 3861.00 | 2490.25 |
| July 2001 | 1200.00 | 3037.52 |
| August 2001 | 2000.00 | 1621.94 |
| September 2001 | 1756.75 | 2173.52 |
| October 2001 | 2500.00 | 2449.49 |
| November 2001 | 3625.46 | 2004.72 |
| December 2001 | 1711.47 | 2883.40 |
| January 2002 | 2472.54 | 2428.98 |
| February 2002 | 1979.97 | 1615.15 |

## II. CONCLUSIONS OF LAW

### A. WHETHER DEBTOR'S AMENDED PLAN WAS PROPOSED IN GOOD FAITH AND NOT BY ANY MEANS FORBIDDEN BY LAW

 A bankruptcy court shall confirm an otherwise appropriate chapter 13 plan if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The proper inquiry should determine whether the plan constitutes an abuse of the provisions, purpose, or spirit of a chapter 13 bankruptcy. The bankruptcy court must use its own fact finding ability and judge each case on it own facts after considering all the circumstances of the case. *In re Estus*, 695 F.2d 311, 316 (8th Cir.1982). The court in *Estus* included a list of eleven non-exclusive factors that may be relevant when determining good faith. *Id.* at 317. Most of these factors were "subsumed" by 11 U.S.C. 1325(b) (enacted in 1984). This provision narrowed the scope of the fact finding to "factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987). However, the test under *Estus* remains in place, and the Court must look at all of the circumstances when making its determination. *In re LeMaire*, 898 F.2d 1346, 1349 (8th Cir.1990) (en banc).

A recent Arkansas bankruptcy court decision sets forth the leading Eighth Circuit Court of Appeals decisions considering the § 1325(a)(3) good faith issue. *In re Ault*, 271 B.R. 617 (Bankr.E.D.Ark.2002).

The term "good faith" is not defined by the Bankruptcy Code. A good faith inquiry examines the circumstances of each individual case. *United States v. Estus (In re Estus)*, 695 F.2d 311, 316 (8th Cir.1982). In a good faith inquiry, the following factors are emphasized by the Eighth Circuit Court of Appeals:

---

**6.** The debtor's testimony at the first meeting of creditors held on June 25, 2001, and August 8, 2001, was received into evidence as Farmers's Exhibits Nos. 1 and 3.

Whether the debtor has accurately stated his debts and expenses on his bankruptcy statements and schedules. *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987) (citing *In re Estus;* 695 F.2d at 317; *In re Johnson*, 708 F.2d 865, 868 (2d Cir. 1983); *Barnes v. Whelan*, 689 F.2d 193, 200 (D.C.Cir.1982); *In re Rimgale*, 669 F.2d 426, 432 (7th Cir.1982)).

Whether the debtor has made any fraudulent misrepresentation in connection with the case to mislead the Bankruptcy Court or his creditors. *Zellner*, 827 F.2d at 1227 (citations omitted).

Whether the debtor has unfairly manipulated the Bankruptcy Code in any aspect of his plan. *Zellner*, 827 F.2d at 1227 (citations omitted).

Whether a specific debt treated in the plan would be nondischargeable in a chapter 7 case. *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir.1990) (citing *Estus*, 695 F.2d at 317).

The types of debts which the debtor seeks to discharge in the chapter 13 case. *LeMaire*, 898 F.2d at 1349 (citing *Estus*, 695 F.2d at 317).

The debtor's motivations and sincerity in seeking chapter 13 relief. *LeMaire*, 898 F.2d at 1349 (citing *Estus*, 695 F.2d at 317).

*Id.* at 619–20.

■ Another factor the Court believes is relevant in this case, and in any other situation where a debtor has taken steps to convert his or her chapter 7 case to a chapter 13 case, is the actual financial performance of the debtor since the inception of his case, including at the time of his motion to convert from a chapter 7 to a chapter 13 through the confirmation hearing.[7]

The debtor's current plan is for 36 months [8] and proposes to pay to the chapter 13 trustee $540.95 per month. The total proposed payments under the plan total $19,474.20. The one secured creditor, having a secured debt in the amount of $7,341.57 plus interest at the rate of 10% per annum for 36 months, will be paid a total of $8528.11, leaving a balance of $10,946.09 to be paid to unsecured creditors. The percentage paid out under the plan to unsecured creditors will be approximately 5.17%.[9]

1. *Whether the debtor has accurately stated his debts and expenses on his bankruptcy statements and schedules*

The debtor's original schedules and Statement of Financial Affairs filed on May 29, ʺ2002, in his chapter 7 case reflected that the debtor owned no real property, which is inaccurate. At trial the debtor testified that he forgot to list his 1/5 interest in 80 acres, which he later valued at $15,000.00. The Court does not credit or believe the debtor's testimony in this instance. The Court is persuaded that the debtor intended to conceal this asset from his creditors by transferring it to his business partners. The debtor stated that he did not have insurance so he wanted to put the property in the names of his partners. This transfer occurred with-

---

**7.** The debtor made available his bank statements from February 2001 to February 2002.

**8.** This is the minimum period of time a debtor can provide in a plan for projected disposable income. 11 U.S.C. § 1325(b)(1)(B).

**9.** The current plan does not have an estimated figure for payment of the chapter 13 trustee administrative expenses or any additional attorney's fees incurred in the case. The debtor's attorney received an initial $700.00 retainer.

in one year of his filing bankruptcy.[10] After the chapter 7 trustee inquired about any transfers of assets, the debtor disclosed his interest in the 80 acres and testified the deed was never delivered because he had not received the balance due from his partners. The debtor then amended his Schedule "C" to claim his 1/5 interest as exempt.

Under item 10 on the Statement of Financial Affairs, the debtor likewise failed to list a transfer of his boat, motor, and trailer to his brother-in-law for $2500.00. This transfer was made on July 1, 2000, and was within one year prior to the debtor's petition. Farmers's Bank Exhibit No. 2 is an appraisal made of the same boat, motor, and trailer approximately ten days later reflecting a value of $7800.00. This transaction also evidences a fraudulent conveyance made with the intent to hinder the debtor's creditors.

The sale of the 1988 Ford pick-up truck to his brother-in-law in 1999 for $1500.00 occurred more than one year before the debtor filed his bankruptcy petition and is beyond the time limit set forth in § 727(a)(2)(A).

On Schedule "I" of the debtor's petition, the debtor listed his estimated average monthly income as $1733.32 (gross). However, his bank statements for the four months prior to his filing on May 29, 2001, reflect an average monthly deposit of $3598.47. Specifically, his deposits for the four months were in the following amounts: February—$5317.25, March—$4035.13, April—$2284.70, and May—$2756.80. The debtor obviously understated his monthly income upon the inception of his chapter 7 case by approximately $1800.00 per month. Likewise, the debtor understated his estimated average monthly expenses. On Schedule "J" he listed

estimated average monthly expenses of $2052.91. His bank statements for the four months prior to his filing on May 29, 2001, reflect an average monthly withdrawal of $3425.11. Specifically, his withdrawals for the four months were in the following amounts: February—$4696.21, March—$3228.96, April—$3167.32, and May—$2647.98. He understated his expenses by over $1300.00 a month. The debtor's bank statements reflect that the debtor intentionally misstated his average income and expenses to mislead his creditors and the Court as to his true monthly income and expenses at the time he filed his chapter 7 case.

The debtor's bank statements also reveal that the debtor intentionally misstated his average monthly income and expenses at the time he filed his motion to convert his chapter 7 case to a chapter 13 case. When the debtor filed his motion to convert on December 3, 2001, he stated on Schedule "I" that he had been employed for one month at RMS Supply Co. The debtor listed his monthly income on Schedule "I" as $2011.95. However, his bank statement reflects a monthly income for November in the amount of $3625.46. The debtor listed his monthly expenses on Schedule "J" as $1471.00. However, his bank statement reflects withdrawals in the amount of $2004.72.

2. *Whether the debtor has made any fraudulent misrepresentation in connection with the case to mislead the Bankruptcy Court or his creditors*

The Court adopts the findings and conclusions set forth in 1. above as to this factor.

---

**10.** Debtor's Exhibit No. 1, "Quit Claim Deed," was dated May 30, 2000.

### 3. Whether the debtor has unfairly manipulated the Bankruptcy Code in any aspect of his plan

The Court adopts the findings and conclusions set forth in 1. above as to this factor. In addition, the accuracy of the disposable income in the debtor's March 4, 2002, amended plan is not ascertainable without the actual deposit slips and checks reflecting the actual monthly income and expenses of the debtor prior to the December 3, 2001, motion to convert. At the hearing, the debtor attributed the increase in his income and the cut in his monthly expenses as the reason for his filing a motion to convert his case to a chapter 13 case. His bank statements do not corroborate his testimony. Both his monthly income and expenses are substantially higher than revealed on his amended Schedules "I" and "J." Whether the debtor is making expenditures that are not necessary to provide him with the essentials to support his job and life is not known. It is obvious to the Court that the debtor's current plan, which is premised upon his December 18, 2001, amended Schedules "I" and "J," is blatantly misleading, inaccurate, and manipulated to deceive the Court and his creditors as to the debtor's true financial means, not only at the time he filed his original chapter 7 case, but also at the time he filed his motion to convert his case to chapter 13. In short, the actual amount of the debtor's surplus income cannot be ascertained in the present posture of the chapter 13 case.

### 4. Whether a specific debt treated in the plan would be nondischargeable in a chapter 7 case

Under the facts of the present case, the bank has not asserted that the debtor committed fraud under § 523 in connection with the bank making loans to the debtor. Rather, the adversary proceeding that the bank filed in the debtor's chapter 7 case asserts violations of § 727(a)(2)(A), fraudulent transfers, and § 727(a)(4), false oaths. The bank objected to the discharge of all the debtor's debts. As previously stated, this Court is convinced that at the time the debtor filed his chapter 7 case, the debtor attempted to hide his 1/5 interest in 80 acres of real property from his creditors and the Court, gave a false oath on his Schedule "A," and transferred a boat, motor, and trailer to his brother-in-law within one year of his filing bankruptcy without adequate consideration and with fraudulent intent in violation of § 727(a)(2)(A).

### 5. The debtor's motivations and sincerity in seeking chapter 13 relief

The facts in this case establish that the debtor originally filed a chapter 7 case, not a chapter 13 case. It was only after the bank had filed an adversary proceeding in his chapter 7 case, and both the bank and the trustee had filed objections to his exemptions, that the debtor decided to file for relief under chapter 13 rather than chapter 7. The current plan before the Court constitutes an abuse of the spirit of chapter 13 because the debtor has distorted his original and amended Schedules "I" and "J" by not giving a true estimate of his monthly income and expenses at the time he filed his schedules. While the debtor's current plan proposes to pay $540.95 a month in disposable income—a significant amount in proportion to his total income as represented by Schedule "I" in the December 18, 2001, amended schedules—the debtor's actual income and expenses greatly exceed the income and expenses reflected in his schedules. His proposed disposable income is not accurately represented in his current plan. Further, a minimum thirty-six month plan under the facts of the debtor's case does not manifest his best efforts to implement

a good faith plan that adheres to the spirit and purposes of chapter 13.

6. *The actual financial performance of the debtor since the inception of his case through and including the confirmation hearing*

■ Good faith is based on accurate information provided by the debtor in his schedules and proposed plan. While a debtor's schedules call for an estimate, a deliberate attempt to either overstate or understate income and expenses is in contravention of evidence of good faith for the purpose of a chapter 13 case or confirmation of a chapter 13 plan pursuant to § 1325. A debtor's bank records since the inception of his or her case are important to ascertain an accurate estimate of income and expenses for both the viability of a chapter 13 case and to determine the disposable income available for creditors under a plan of reorganization. Without verification of the debtor's actual financial performance in his or her case, especially when the financial records are in existence, the debtor is free to represent his or her expenses without restraints. In this case the debtor's bank statements alone reflect that the debtor substantially distorted his original and amended Schedule "I" income and Schedule "J" expenses. Knowing that his original and amended plans were premised on his distorted financial information, his current plan is filed in bad faith and prohibited by law under § 1325(a)(3).

After reviewing the relevant factors emphasized by the Eighth Circuit Court of Appeals as determinative of a good faith inquiry, the Court finds that the debtor's amended chapter 13 plan is not confirmable. The Court will sustain the objections to confirmation filed by the bank and the trustee.

## B. OBJECTIONS TO DEBTOR'S CLAIM TO EXEMPTIONS

The bank and the trustee have also objected to the debtor's claim of exemptions as to the following properties: (1) 1/5 interest in 80 acres of land valued at $15,000.00; (2) boat, motor, and trailer; and (3) carpenter's tools valued at $1500.00. These exemptions were claimed by the debtor pursuant to § 522(d). The burden of proof pursuant to Federal Rule of Bankruptcy Procedure 4003 is on the objecting party to prove that the exemptions are not properly claimed.

■ The Court will first address the exemption claimed by the debtor of a 1/5 interest in 80 acres of land. The debtor did not list any real estate interest owned by the debtor on Schedule "A," filed on May 29, 2001. At the debtor's first meeting of creditors in his chapter 7 case, the trustee inquired as to whether the debtor had transferred any property within the past two years. The debtor testified that he had sold his 1/5 interest in the 80 acre farm to his two partners for $15,000.00 cash. At the continued meeting of creditors, the debtor testified that he had received $1400.00 from each of his partners from the sale of his interest in the farm. He said it was an oral contract and there was not any definite time in which they were to pay the balance. The debtor further testified that he was having financial trouble at the time and could not obtain insurance on the property in his name. He signed a deed to the property transferring it to his partners but had not delivered the deed because the partners had not paid the balance owed.[11] On September 20, 2001, the debtor amended Schedule "A" to include his 1/5 interest in 80 acres of real estate, and amended Schedule "C" to claim the property exempt pursuant to

---

**11.** *See* Debtor's Exhibit No. 1, Quit Claim Deed dated May 30, 2001.

§ 522(d) in the amount of $8625.00. The total value of his interest was listed as $15,000.00. At the hearing, the debtor testified that he had forgotten that he had an interest in the property which was the reason he did not previously list it.

As previously set forth, the Court does not believe or credit the debtor's testimony that he forgot that he owned real estate. He simply did not want the Court or his creditors to know of its existence and intentionally concealed this fact. Further, the Court is convinced that he did not want to keep the property in his name because he was having financial troubles at the time. The debtor gave a false oath at the time he filed his original Schedule "A" by failing to disclose his interest in the property.

■ When a bankruptcy petition is filed, virtually all property of the debtor at that time becomes property of the bankruptcy estate. *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 755 (8th Cir. 1997). Section 541 of the bankruptcy code defines "property of the estate" broadly to include all of the debtor's interests, legal and equitable. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 and nn. 8, 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Nevertheless, some property may be removed from the sweeping scope of the bankruptcy estate under § 522. Further, a debtor may amend a voluntary petition pursuant to Federal Rule of Bankruptcy Procedure 1009(a), "as a matter of course at any time before the case is closed." *In re Peterson*, 920 F.2d 1389, 1394 (8th Cir. 1990). However, there are exceptions to this principle.

■ Exceptional circumstances may prevent a debtor from amending his schedules. For example, amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties. *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982). In the present case, the concealment of the debtor's property interest worth $15,000.00, and the fact that if he had rightly disclosed his property interest his creditors would have been entitled to the value of $6375.00 in non-exempted assets in the form of payment in the debtor's chapter 13 plan, is sufficient to establish prejudice to his chapter 13 creditors. The Seventh Circuit Court of Appeals has held that fraudulent concealment, being clear evidence of the debtor's bad faith, is a proper ground for the court's denying the exemption in that asset. *In re Yonikus*, 996 F.2d 866, 874 (7th Cir.1993). The debtor's fraudulent concealment in this instance has a prejudicial effect on his creditors in that they would have received $6375.00 more through the debtor's chapter 13 plan if the asset had been disclosed. The Court will sustain the bank's and the chapter 7 trustee's objection as to the debtor's claim of exemption in his 1/5 interest in 80 acres of land as set forth on his amended petition. Further, the Court will deny the debtor's amended Schedule "C" filed on December 18, 2001, as to the debtor's 1/5 interest in the 80 acres set out therein.[12]

■ The bank and the trustee also objected to the debtor's claim of exemption regarding the boat, motor, trailer, and carpenter's tools. As to the bank's and trustee's objection to the debtor's claim of exemption to a boat, motor, and trailer, their objections will be overruled. The debtor

---

**12.** The current plan also violates § 1325(a)(4) in that the debtor's creditors would receive more under chapter 7. The debtor's chapter 13 plan would have to include the value of the debtor's 1/5 interest in the 80 acres ($15,000.00) because this Court has disallowed his claim of exemption to his real estate interest.

has claimed no exemption in a boat, motor, or trailer. As to the debtor's claim of exemption in carpenter's tools having a value of $1500.00, the bank relies upon a financial statement in which the debtor purportly listed the same tools as having a value of $10,000.00. However, the financial statement was never offered, or received, into evidence. Further, a review of the transcripts of the § 341(a) meeting of creditors received into evidence does not indicate any testimony by the debtor as to the value of the tools other than the amount listed in his schedules. Likewise, the bank and the chapter 7 trustee's objections as to the value of the carpenter tools will be overruled.

IT IS SO ORDERED.

In re Ronnie A. Terry Case No.

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

| Debtor's Marital Status: single | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| Debtor's Age: 46 Spouse's Age: | NAMES | AGE | RELATIONSHIP |
| | Brandon | 16 | son |
| | Lindsey | 11 | daughter |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | sales | |
| Name of Employer | DMJ Construction | |
| How long employed | 3 months | |
| Address of Employer | # 6 Town Square, Greenwood, Ar | |

| Income: (Estimate of average monthly income) | DEBTOR | SPOUSE |
|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly.) | $ 1,733.32 | $ |
| Estimated monthly overtime | $ 0.00 | $ |
| SUBTOTAL | $ 1,733.32 | $ |
| LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $ 433.33 | $ |
| b. Insurance | $ 0.00 | $ |
| c. Union dues | $ 0.00 | $ |
| d. Other (Specify) | $ 0.00 | $ |
| SUBTOTAL OF PAYROLL DEDUCTIONS | $ 433.33 | $ |
| TOTAL NET MONTHLY TAKE HOME PAY | $ 1,299.99 | $ |
| Regular income from operation of business or profession or farm (attach detailed statement) | $ 0.00 | $ |
| Income from real property | $ 0.00 | $ |
| Interest and dividends | $ 0.00 | $ |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ 0.00 | $ |
| Social security or other government assistance (Specify) | $ 0.00 | $ |
| Pension or retirement income | $ 0.00 | $ |
| Other monthly income (Specify) | $ 0.00 | $ |
| TOTAL MONTHLY INCOME | $ 1,299.99 | $ |

TOTAL COMBINED MONTHLY INCOME $ 1,299.99 (Report also on Summary of Schedules)

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document: NONE

252

M 801
.90)
In re

**Ronnie A. Terry** _____ , **Case No.** 01-70759

Debtor (If known)

*Amesded*

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

| Debtor's Marital Status: single | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| Debtor's Age: 46 Spouse's Age: | NAMES | AGE | RELATIONSHIP |
| | Brandon | 16 | son |
| | Lindsey | 11 | daughter |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | sales | |
| Name of Employer | RSM Supply, Inc. | |
| How long employed | 1 month | |
| Address of Employer | 506-A N. 2nd Fort Smith, Ar 72901 | |

Income: (Estimate of average monthly income)

| | DEBTOR | SPOUSE |
|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly.) | $ 2,166.65 | $ |
| Estimated monthly overtime | $ 0.00 | $ |
| SUBTOTAL | $ 2,166.65 | $ |
| LESS PAYROLL DEDUCTIONS | | |
| a. Payroll taxes and social security | $ 504.70 | $ |
| b. Insurance | $ 0.00 | $ |
| c. Union dues | $ 0.00 | $ |
| d. Other (Specify) _____ | $ 0.00 | $ |
| SUBTOTAL OF PAYROLL DEDUCTIONS | $ 504.70 | $ |
| TOTAL NET MONTHLY TAKE HOME PAY | $ 1,661.95 | $ |
| Regular income from operation of business or profession or farm (attach detailed statement) | $ 0.00 | $ |
| Income from real property | $ 0.00 | $ |
| Interest and dividends | $ 0.00 | $ |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ 0.00 | $ |
| Social security or other government assistance (Specify) _____ | $ 0.00 | $ |
| Pension or retirement income | $ 0.00 | $ |
| Other monthly income (Specify) monthly expense account | $ 350.00 | $ |
| TOTAL MONTHLY INCOME | $ 2,011.95 | $ |

TOTAL COMBINED MONTHLY INCOME _____ **$ 2,011.95** _____ (Report also on Summary of Schedules)

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document· NONE

(6/90)

Ronnie A. Terry _____ , Case No. _____

**Debtor** (If known)

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse".

| | | |
|---|---|---:|
| Rent or home mortgage payment (include lot rented for mobile home) | $ | 581.00 |
| Are real estate taxes included? Yes ✔ No | | |
| Is property insurance included? Yes ✔ No | | |
| Utilities Electricity and heating fuel | $ | 75.00 |
| Water and sewer | $ | 25.00 |
| Telephone | $ | 65.00 |
| Other _____ | $ | 0.00 |
| Home maintenance (repairs and upkeep) | $ | 10.00 |
| Food | $ | 250.00 |
| Clothing | $ | 25.00 |
| Laundry and dry cleaning | $ | 0.00 |
| Medical and dental expenses | $ | 80.00 |
| Transportation (not including car payments) | $ | 0.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 0.00 |
| Charitable contributions | $ | 0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
| Homeowner's or renter's | $ | 0.00 |
| Life | $ | 0.00 |
| Health | $ | 0.00 |
| Auto | $ | 300.00 |
| Other _____ | $ | 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify) _____ | $ | 20.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan) | | |
| Auto | $ | 271.91 |
| Other _____ | $ | 0.00 |
| Alimony, maintenance or support paid to others | $ | 0.00 |
| Payments for support of additional dependents not living at your home | $ | 350.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| Other _____ | $ | 0.00 |
| **TOTAL MONTHLY EXPENSES** (Report also on Summary of Schedules) | **$** | **2,052.91** |

[FOR CHAPTER 12 AND 13 DEBTORS ONLY]

Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at some other regular interval.

| | | |
|---|---|---|
| A. Total projected monthly income | $ | |
| B. Total projected monthly expenses | $ | |
| C. Excess income (A minus B) | $ | |
| D. Total amount to be paid into plan each _____ | $ | |
| (interval) | | |

Form B6J
(6/90)

In re Ronnie A. Terry , Case No. 01-70759
 Debtor (If known)

*Amended* **SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)**

☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate
schedule of expenditures labeled "Spouse".

| | |
|---|---:|
| Rent or home mortgage payment (include lot rented for mobile home) | $ 411.00 |
| Are real estate taxes included? Yes ✓ No | |
| Is property insurance included? Yes ✓ No | |
| Utilities Electricity and heating fuel | $ 75.00 |
| Water and sewer | $ 25.00 |
| Telephone | $ 25.00 |
| Other | $ 0.00 |
| Home maintenance (repairs and upkeep) | $ 10.00 |
| Food | $ 150.00 |
| Clothing | $ 25.00 |
| Laundry and dry cleaning | $ 0.00 |
| Medical and dental expenses | $ 80.00 |
| Transportation (not including car payments) | $ 0.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ 0.00 |
| Charitable contributions | $ 0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | |
| Homeowner's or renter's | $ 0.00 |
| Life | $ 0.00 |
| Health | $ 0.00 |
| Auto | $ 300.00 |
| Other | $ 0.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | |
| (Specify) | $ 20.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan) | |
| Auto | $ 0.00 |
| Other | $ 0.00 |
| Alimony, maintenance or support paid to others | $ 0.00 |
| Payments for support of additional dependents not living at your home | $ 350.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ 0.00 |
| Other | $ 0.00 |
| **TOTAL MONTHLY EXPENSES** (Report also on Summary of Schedules) | **$ 1,471.00** |

[FOR CHAPTER 12 AND 13 DEBTORS ONLY]
Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at
some other regular interval.

| | |
|---|---:|
| A. Total projected monthly income | $ 2,011.95 |
| B. Total projected monthly expenses | $ 1,471.00 |
| C. Excess income (A minus B) | $ 540.95 |
| D. Total amount to be paid into plan each _____ Monthly (Interval) | $ 540.95 |